UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| TAE-AHN LEA | ) | COMPLAINT WITH DEMAND |
| | ) | FOR JURY TRIAL |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO. 3:19-CV-419-RGJ |
| v. | ) | |
| | ) | |
| STEVE CONRAD | ) | |
| | ) | |
| Serve: | ) | |
| Steve Conrad | ) | |
| Louisville Metro Police Department | ) | |
| 633 W. Jefferson Street | ) | |
| Louisville, Kentucky 40202 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM HIBBS | ) | |
| | ) | |
| Serve: | ) | |
| William Hibbs | ) | |
| Louisville Metro Police Department | ) | |
| Ninth   Mobile Division | ) | |
| 635 Industry Road, 2nd Floor | ) | |
| Louisville, Kentucky 40208 | ) | |
| | ) | *ELECTRONICALLY FILED* |
| and | ) | |
| | ) | |
| KEVIN CRAWFORD | ) | |
| | ) | |
| Serve: | ) | |
| Kevin Crawford | ) | |
| Louisville Metro Police Department | ) | |
| Ninth   Mobile Division | ) | |
| 635 Industry Road, 2nd Floor | ) | |
| Louisville, Kentucky 40208 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GABRIEL HELLARD | ) | |
| | ) | |
| Serve: | ) | |
| Gabriel Hellard | ) | |

Louisville Metro Police Department )
Ninth   Mobile Division )
635 Industry Road, 2nd Floor )
Louisville, Kentucky 40208 )
)
and )
)
JEFFREY MCCAULEY )
)
    Serve: )
Jeffrey McCauley )
Louisville Metro Police Department )
Ninth   Mobile Division )
635 Industry Road, 2nd Floor )
Louisville, Kentucky 40208 )
)
and )
)
JASON MCNEIL )
)
    Serve: )
Jason McNeil )
Louisville Metro Police Department )
Ninth   Mobile Division )
635 Industry Road, 2nd Floor )
Louisville, Kentucky 40208 )
)
and )
)
KIERSTEN HOLMAN )
)
    Serve: )
Kiersten Holman )
Louisville Metro Police Department )
Ninth   Mobile Division )
635 Industry Road, 2nd Floor )
Louisville, Kentucky 40208 )
)
           DEFENDANTS )

_____

Comes the Plaintiff, Tae-Ahn Lea, by and through Counsel, and asserts the following

Complaint, claims, and averments against the Defendants Steve Conrad, William Hibbs, Kevin

Crawford, Gabriel Hellard, Jeffrey McCauley, Jason McNeil, and Kiersten Holman individually

and as agents and employees of Louisville Metro Government d/b/a Louisville Metro Police Department:

## PRELIMINARY STATEMENT

1. Tae-Ahn Lea is an honors graduate from Central High School. He was the homecoming king, has no criminal history and upon graduation became employed with a well-respected local car dealership. Tae-Ahn, however, also happens to be black, live in a low-income neighborhood, and drive his mother's fairly new vehicle. He was thus the perfect target for members of the Ninth Mobile Division of the Louisville Metro Police Department who, throughout the past two years in Louisville, have employed a discriminatory, prejudicial, and illegal stop and frisk practice in which "violent crimes" units use traffic stops as a pretext for pulling over young black men driving nice cars, handcuffing them and subjecting them to abusive, racist, and intrusive searches without consent, good cause, or reasonable suspicion of any criminal activity.  On August 9, 2018 Tae-Ahn was surveilled and followed because he was black and in a nice car; he was stopped for no legitimate reason and without any reasonable suspicion of criminal activity; he was pat down, searched and handcuffed without consent; meanwhile, throughout the process, Lea was also verbally abused, threatened, lied to, embarrassed, humiliated, and mocked by officers as these officers combed through Lea's vehicle, without consent, with a drug dog in desperate hopes of finding something to justify their conduct. Nothing was found. And then Tae-Ahn was sent on his way with a citation for a wide turn (which prosecutors immediately dismissed) and an experience which will haunt him for years to come.

2. This experience of Lea's is a result of biased policing which is engrained into the Ninth Mobile Division through a "People, Places, and Narcotics" practice of LMPD,[1] which was implemented by the police chief in order to pay officers substantial overtime and give them carte blanche to target black males in certain neighborhoods by way of unconstitutional traffic stops, searches, seizures and detainments. These practices, as promulgated by the Chief and Hibbs, as the Major of the Ninth Mobile Division, resulted in unlawful, racially motivated stops which were well outside the confines of *Terry*, searches which were without consent or reasonable suspicion, unlawful seizures and unlawful detention of citizens through handcuffing. Ninth Mobile officers were essentially trained and encouraged to pull over vehicles with black males, search them, detain them, and then cross their fingers that the vehicle reveals drugs or unregistered guns. The disturbing consequences were and are long term emotional damage and distrust of law enforcement from the substantial majority of individuals, like Lea, who are subjected to these constitutional violations without any criminal wrongdoing whatsoever.

## **JURISDICTION AND VENUE**

3. Jurisdiction over claims arising from Defendants' violation of the 4th and 14th Amendments of the United States Constitution is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

4. Venue is proper in this Division.

---

[1] Chief Conrad has indicated that his violent crimes unit was directed to use traffic stops for simple minor violations as a pre-text for searching for and identifying drugs and firearms

**PARTIES**

5.  Plaintiff Tae-Ahn Lea is a resident of this judicial district.

6.  Defendants Kevin Crawford, Gabriel Hellard, Jeffrey McCauley, Jason McNeil and Kiersten Holman (collectively referenced herein as "the LMPD Officers") are police officers with LMPD and at all times relevant herein acted under color of law. Each is sued in his or her individual and official capacities.

7.  Defendant Steven Conrad is, at the time of this filing, the LMPD Chief. At all times relevant herein, he acted under the color of state law. He is sued in his individual and official capacities.

8.  Defendant William Hibbs was at all times relevant herein the Major overseeing LMPD's Ninth Mobile Division. At all times relevant herein, he acted under the color of state law. He is sued in his individual and official capacities.

**FACTS**

9.  The Louisville Metro Police Department's ("LMPD") stated mission is "to deliver professional, effective services, fairly and ethically, at all times, to all people, in order to prevent crime, control crime, and enhance the overall quality of life for citizens and visitors."[2]

*__LMPD Officers' Ministerial Obligations Under Standard Operating Procedures__*[3]

10. In order to deliver this mission, the LMPD Officers are bound by their Standard Operating Procedures, which set forth requirements, guidelines, policies, and practices regarding their conduct under delineated circumstances.

---

[2] https://www.louisville-police.org/
[3] LMPD Standard Operating Procedures (hereinafter LMPD SOP) page 3

11. These SOPs establish standards for reasonably prudent law enforcement officers working as LMPD officers.

12. The failure of an LMPD officer to adhere to the SOP objective standards constitutes a per se breach of a ministerial obligation set forth upon the officer.

13. For traffic stops, LMPD officers are bound by the following requirements regarding pat-downs, Terry searches, warrantless searches and searches without consent:[4]

    a. To only perform a Consent Search based on the consent of the individual whose person or property is being searched.

    b. To only accuse a suspect of a particular crime when Probable Cause for the same existed and were based upon reliable objective facts.

    c. To know that Reasonable Suspicion includes articulable facts that, within the totality of the circumstances, lead an officer to reasonably suspect that criminal activity has been, is being, or is about to be committed.

    d. To only conduct Field Interviews that are brief detainments of, or consensual contact with, individuals based upon reasonable suspicion for the purposes of determining the individual's identity and resolving the officer's suspicions.

    e. To only perform Pat Downs or "frisks" of the outer garments of a suspect for weapons if the suspect has been legitimately stopped with reasonable suspicion of a crime and the officer has reasonable grounds to believe that the suspect is armed and dangerous to the officer or others.

---

[4] LMPD SOP 3.6

f.  To only engage in Terry Stops when there is reasonable suspicion that the individual may have been engaged, is engaging, or is about to engage in criminal activity.

g.  To not detain a suspect for longer than what is reasonably necessary to make reasonable inquiries and either confirm or refute his/her suspicions of criminal activity.

h.  To consider the following prior to making a pat down:

    i.  The type of crime suspected;

    ii.  Prior knowledge of the suspect's use of force and/or propensity to carry deadly weapons;

    iii.  The demeanor of the suspect; and

    iv.  Visual indications that suggest that the suspect is carrying a firearm or other weapon.

i.  To only conduct a warrantless search of a vehicle based upon Probable Cause or Consent.

j.  To communicate the reason for the arrest when the officer is not in uniform.

k.  To issue a citation rather than making an arrest for traffic and misdemeanor offenses which are not the exceptions set forth within SOP 10.1.3.

l.  To only use physical force and restraining devices when there is a reasonable belief that the force is necessary to defend himself, prevent the escape of an arrested person when the force could justifiably have been used to make the arrest under which the person is in custody, to move or remove any person who is obstructing a lawful police action in such a manner that the lawful police action cannot be

accomplished or to prevent a person from committing suicide or inflicting serious physical injury upon himself/herself.

m. To the extent possible, utilize an escalating scale of options when using force and assure that the degree of force utilized is reasonable. The levels of control are:

    i.   Officer presence

    ii.  Verbal direction

    iii. Soft empty hand control and restraining devices

    iv.  Chemical agent

    v.   Hard empty hand

    vi.  CEW

    vii. Impact weapon and

    viii. Deadly force.

n. To observe and follow the Strategies and Tactics of Patrol Stops (S.T.O.P.S.) lesson plan, whenever possible, which sets forth the following progression:[5]

    i.   The officer will greet the violator and identify himself/herself by name.

    ii.  The officer should explain the reason for stopping the violator.

    iii. The officer will ask the operator of the vehicle if there was a legitimate reason for doing what he/she did.

    iv.  The officer will ask where the driver's license, insurance, and registration information is located before asking him/her to retrieve any of them.

---

[5] LMPD SOP 7.12.7

    v.   The officer will give instructions to the violator to follow (e.g. remain in the vehicle and buckle up) as he/she reviews documentation and decides what action to take.

    vi.   The officer will issue the appropriate warning or citation and let the violator know that the traffic stop is over.

  o.  To refrain from Biased Law Enforcement Practices, as they are confirmed to impair investigative effectiveness, alienate citizens, foster a distrust of law enforcement, may subject officers to civil or criminal liability and are unethical. The prohibitions against biased policing include refraining from the following based solely upon race or gender:[6]

    i.   Initiating a traffic stop, surveillance, detention, or other law enforcement activity

    ii.   Officers will not inquire into the immigration or citizenship status of an individual, except where the inquiry relates to a specific criminal or homeland security investigation.

    iii.   Supervisors will familiarize their personnel with the policy on biased policing, support its provisions, observe officer behavior to identify and prevent biased law enforcement practices and immediately report any biased law enforcement practice, in writing, through the appropriate chain of command, to the Chief of Police.

---

[6] LMPD SOP 8.8

  p. Make a reasonable effort to provide an explanation as to why the citizen was stopped, unless doing so would undermine an investigation or jeopardize the officer's safety

  q. To never detain a suspect for longer than what is reasonably necessary to make reasonable inquiries and either confirm or refute the suspicions of criminal activity.

  r. Complete a Vehicle Stop Reporting form for every traffic stop, regardless of whether a citation was written or an arrest was made. The only exceptions are motorist assists, road blocks, and traffic accidents. Officers should use the following descriptions for searches:

    i. Consent

    ii. Pat down

    iii. Incident to arrest

    iv. Probable cause

    v. Other

14. LMPD Officers are provided definitions within the SOP's. Included within these definitions are the following:

  a. Custodial Interrogation: Questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his/her freedom of action in any significant way.[7]

  b. Arrestee: A person placed in custody or charged with a crime when there is probable cause to believe that the person has committed a crime.[8]

---

[7] LMPD SOP 8.25.1
[8] LMPD SOP 8.30.2

    c.   Physical Arrest: Taking a person into police custody based upon a warrant or, with probable cause, on open criminal charges in accordance with law and this policy.[9]

    d.   Traffic Citation: A Kentucky Uniform Citation issued to a person for traffic charges.[10]

    e.   Violation: A violation is defined as an offense that is punishable by a fine or other penalty less than confinement in a jail or penitentiary.[11]

### *LMPD's Unconstitutional Traffic Stop Policies, Patterns, Practices and Initiatives*

15. In 2017, LMPD implemented a "People, Places and Narcotics" initiative which was neither announced publicly are made part of the SOP's.[12]

16. Chief Conrad claimed this initiative was an effort to target violent crime in specific high-crime neighborhoods.

17. The reality was that the program, in which officers were authorized to receive substantial overtime payments, involved the deployment of "violent crime units" into black neighborhoods and pulling over vehicles being driven by black males in hopes of discovering criminal activity.

18. These traffic stops routinely violated the rights of citizens, who were not informed that they were being detained due to a pretextual stop, search and frisk policy and who were instead misled to believe that were obligated to exit their vehicles, undergo full-body pat-downs, get handcuffed and have drug dogs and officers comb through every crevice of their vehicles, all while the officers had no reasonable suspicion of criminal activity on the part of the citizen.

---

[9] LMPD SOP 10.1.1
[10] LMPD SOP 10.1.1
[11] LMPD SOP 10.1.1
[12] Louisville Metro Council Joint Government & Audit and Public Safety Committees Meeting, April 16, 2019

19. The outcome of this initiative was and remains that black drivers in Louisville are at least three times more likely to be pulled over by LMPD than white drivers.

20. These biased stops were part of LMPD's practices, policies and directives, as were implemented by Chief Conrad and confirmed by Major Johnson on September 19, 2018, when Johnson wrote:

*"I've given clear instruction to my officers to aggressively patrol these neighborhoods and take as much enforcement as possible. The stop is an example of the exact action I have asked my officers to take in these neighborhoods…While being stopped by the police may not be a pleasant experience and may cause some people anxiety, it doesn't mean the police were wrong. I am responsible for what my officers do, and, in this case, my officer was doing what I asked him to do."*

21. Conrad confirmed this initiative of his in 2019, stating that certain people (including black males) and places (including low income black neighborhoods) are "targeted" and that black males in low income black neighborhoods are much more likely to be pulled over, searched, and interrogated for traffic offenses as simple as "wide turns."

22. Conrad stated in his defense of this policies and practices that these pretextual, racially based traffic stops which led to lengthy detentions and warrantless searches were what the community wanted, and that when the basis for this conduct was explained to the individual upon whom it is exposed, that he is typically accepting and appreciative of it.

23. Tae-Ahn Lea was not accepting or appreciative of his treatment from LMPD.

### *LMPD's Unconstitutional Stop, Search, Seizure and Detention of Tae-Ahn Lea*

24. On August 9, 2018, members of the Ninth Mobile Division of LMPD were in the Dixie and Algonquin neighborhood of Louisville.

25. Lea, who was driving his mother's vehicle, pulled into a gas station to get a Slushie and use an ATM. He noticed that Defendants McNeil and Holman were watching him when he entered the gas station.

26. When Lea exited the gas station, he noticed that Defendants Crawford and Hellard had joined McNeil and Holman at the pumps and that all four officers were watching him.

27. Lea knew through conversations with his mother to always respect the police, maintain courtesy, keep his hands visible and not act in a manner which would call his actions into question. Furthermore, Lea knew to obey the law: he did not carry narcotics or firearms and was driving a vehicle with a valid license, registration and insurance.

28. After leaving the gas station, Lea observed as Defendants Crawford and Hellard began to follow him. He remained calm, drove within the speed limit, and used his turn signals as he traveled westbound on Algonquin Parkway.

29. Lea approached Dixie Highway and activated his right turn signal as he sat at a red light in the far-right lane on Algonquin Parkway to turn on to Dixie Highway. Lea made the right turn when his traffic light turned green.

30. Despite Lea's compliance with traffic laws, the LMPD Officers initiated a traffic stop of him. As soon as Lea turned onto Dixie Highway, Defendant Crawford activated his lights to pull Lea over.

31. Lea was young, black, in a poor neighborhood, driving a nice car, and was coming from getting cash from an ATM, so to the LMPD Officers he was obviously a gangster whose vehicle was filled with drugs and guns.

32. Lea's vehicle had no drugs or guns in it.

33. Officers approached Lea, who was compliant, had his hands visible, and had his license and insurance information readily visible and available to the Officers, which he produced immediately upon request.

34. Defendant Crawford indicated to Lea that he pulled Lea over for an improper turn.

35. The "improper" ("wide") turn was not an offense which would have justified an arrest on a stand-alone basis.

36. Lea received a phone call from his mother approximately two minutes after he was stopped. He candidly advised the officers that his mother was on the phone.[13]

37. Lea continued to comply with the officers' requests.

38. Crawford asked Lea whether there were any drugs or weapons in the car, to which Lea responded, "no."

39. Noticeably annoyed, Crawford commanded Lea to put his hands on the steering wheel. Crawford then reached into the vehicle and opened the door from the inside door handle, while Defendant Hellard was at the passenger window of Lea's vehicle shining the flashlight (it was daytime) into different areas of the vehicle, looking for any indications of criminal activity.

40. Crawford then removes Lea's cell phone from his lap, places it on the dashboard, and proceeds to physically remove Lea from his vehicle without any explanation, probable cause, or reasonable suspicion that Lea was engaged in or about to be engaged in any criminal activity or that Lea posed a threat to the officers.

41. Crawford then grabs Lea's hands and walks him toward the back of the vehicle, where Hellard joins them.

42. Crawford again asks Lea if he has any weapons or drugs, and Lea again responds that he does not.

43. Crawford asks Lea for permission to search him; Lea denies permission.

---

[13] Lea initially called his mother to advise her of the feeling he had about the officers as he left the Thornton's gas station. She advised him not to worry and to come on home, as he was not doing anything wrong.

44. Crawford then says, "okay awesome", and proceeds to pat down and frisk Lea over his objections and without justification.

45. Once the pat down is complete, Crawford orders Lea to stand behind the car and asks Lea if he can search the car. Lea clearly responds, "no."

46. Defendants Crawford and Hellard continue to detain Lea outside of his vehicle until Defendant McCauley arrives with a drug dog.

47. Defendant Crawford again walks up to the vehicle and uses his flashlight to search for something to give him a reasonable basis for a search. He comes up empty.

48. The Officers then allege that the drug dog has a "hit" and that this justifies a vehicle search, which they proceed to do.

49. None of the LMPD Officers articulate the "hit" or how it was obtained.

50. The search of Lea's vehicle constituted an examination of Lea's property in which he had a reasonable expectation of privacy.

51. The purpose of the search of Lea's vehicle was discovering contraband, weapons, or other evidence of guilt to be used in a criminal prosecution.

52. The search included and involved prying into, or manipulating of, concealed or hidden places in order to discover something criminal in nature.

53. While Crawford is looking through the car with the flashlight, Defendant Hellard is at the back of the vehicle, bullying Lea with a threat as to how a jury won't like him if they do find drugs in the vehicle.

54. Crawford and McCauley proceed to engage in a private discussion as to how every police stop is now on "Facebook Live."

55. Defendant McCauley proceeds to dispatch his K-9 into Lea's vehicle, allowing him to tear into the interior due to the alleged, yet unarticulated, "hit" from the dog.

56. This "hit" was either a misrepresentation from Defendant McCauley, or the dog is in need of proper training from a reasonably competent officer as there were no narcotics in Lea's vehicle.

57. Meanwhile, Lea was placed into handcuffs for the duration of this search, where he remained for approximately twenty minutes.

58. Lea was advised that he "was not free to go."

59. From the time Lea was handcuffed and advised that he was not permitted to leave until the time Lea was permitted to leave, he remained in custody.

60. Pursuant to LMPD SOP 8.30.2, Lea met the definition of an "Arrestee" while he remained in custody.

61. Defendants Crawford, Hellard, and McCauley all lacked grounds for detaining Lea and searching his vehicle.

62. While Defendants Crawford and McCauley were searching Lea's vehicle, Lea's mother arrived at the scene.

63. Even when the dog failed to uncover anything in the vehicle (Defendant McCauley removed the dog to the patrol vehicle), McCauley returns to Lea's vehicle and continues to search it for another five minutes in a desperate attempt to identify something in the vehicle which he could then try and rely upon as justification for his unlawful actions.

64. Holman and McNeil eventually proceed to re-join Crawford, Hellard, and McCauley, despite the only suspected offense being a wide right turn by a 140 pound, 18-year-old who was already placed in handcuffs by the time of their arrival.

65. During the illegal detainment, Lea's mother arrives. She was approached by Holman and McCauley, who boasted that all of the officers who were present were part of a "violent crimes task force" and that the reason the officers stopped and were searching Lea was in an effort to "reduce violent crime."

66. None of the LMPD Officers articulated any reason as to why they believed that stopping and searching Lea would reduce violent crime, nor did they attempt to articulate any specific suspicions which prompted them to search Lea.

67. None of the LMPD Officers articulated any basis for their apparent determination that Lea was suspected of committing violent crime.

68. During the detainment of Lea, Hellard stated that the LMPD Officers were going to stop "thirty more people and do the same thing" to each of them.

69. No drugs, weapons, or evidence of any crime were discovered during the search of Lea's person or vehicle.

70. Lea was given a citation for improper turning, which was subsequently dismissed on the motion of the prosecuting attorney.

### *Ninth Mobile Division's Pack Mentality*

71. The Defendant LMPD Officers are members of the LMPD's Ninth Mobile Division, led by Major William Hibbs under the direction of Louisville Metro Police Chief Steve Conrad.

72. Pursuant to LMPD SOP 1.11.7, the Ninth Mobile Division:

*(A)ddresses violent crime in Louisville Metro by focusing on hot spots of violent criminal activity, identifying and arresting the worst offenders, and addressing gang activity that the Ninth Mobile Division encounters. The Ninth Mobile Division is also responsible for identifying and apprehending fugitives who are known violent offenders.*

73. Officers of the Ninth Mobile Division have been given orders to engage in "aggressive policing" to reduce violent crime from Hibbs and Conrad.

74. Ninth Mobile Division officers have a pattern and practice of aggressively and illegally targeting black motorists and pulling them over in a pack-like mentality. They then proceed with surrounding the vehicles, subjecting the vehicle occupants to unlawful and humiliating searches, engaging in unlawful and intrusive searches of the vehicles and performing the conduct with a collectively racist and bullying demeanor. After the fact, these officers justify these aggressive stops by citing minor traffic violations.

75. The Ninth Mobile Division officers protect each other, encouraging members to not say anything which will implicate other officers from a PIU and PSU standpoint or otherwise disclose the true details of their illegal stops, frisks, detentions, searches, uses or force and arrests.

76. By the time Lea had stopped to purchase the Icee and use the ATM at the Thornton's gas station at Seventh Street and Algonquin Parkway, the LMPD Officers were already targeting him to be the next victim for their pack.

77. Observing Lea from their unmarked car next to his vehicle, the LMPD Officers knew or, if acting with reasonable training, prudence and diligence, should have known that there was no reasonable suspicion of any activity by Lea which would warrant a stop, pat-down, search, seizure and detention by handcuffs.

78. However, because of the practices promoted by Conrad and Hibbs, Lea made for an ideal target for the LMPD Officers without concerns for legality or repercussions.

## *Constitutional Violations and Deprivations*

79. The action herein is for the unjustifiable, intentional, and unlawful stop of Lea, detainment of Lea, search of Lea, false imprisonment of Lea, intentional infliction of emotional distress upon Lea by Crawford, Hellard, McCauley, Holman, and McNeil, all of whom were acting under the color of state law, under the direction of Chief Conrad and Major Hibbs, and in violation of Lea's Constitutional rights under the Fourth and Fourteen Amendments of the United States Constitution.

80. All of the unlawful LMPD Officer conduct herein was pursuant to training, direction, and ratification of Hibbs and Conrad which each knew to amount to a malicious and deliberate indifference to the rights of citizens, including Lea.

81. There was no consent, probable cause or reasonable suspicion present to justify in any way the stop, detention, arrest, search and seizure performed upon Lea by the LMPD Officers.

82. Hibbs and Conrad knew or should have known that the orders to use "aggressive policing" through "traffic stops" for minor violations in black neighborhoods as a mechanism to reduce violent crime would result in biased policing and unconstitutional stops, searches, seizures and detainments of citizens, the majority of whom are black males and persons living in poverty-stricken neighborhoods.

83. This action seeks compensatory, nominal, and punitive damages to the Plaintiff for the Defendants' individual and collectively deliberate acts of depriving Lea of his rights guaranteed by the U.S. Constitution under the Fourth Amendment and Fourteenth Amendment, as well as those afforded to him under all other applicable state and federal laws, including but not limited to those within 42 U.S.C. § 1983.

## *Lack of Immunity for Constitutional Violations*

84. The LMPD Officers each failed their black-letter ministerial duties under the LMPD Standard Operating Procedures.

85. To the extent any of the duties were discretionary, the violations to Lea involved clearly established constitutional rights of which a reasonable officer would have known.

86. Reasonably prudent law enforcement officers would have known that the totality of the circumstances did not provide them with reasonable suspicion to perform a Terry stop on Lea, to detain Lea, to search Lea and his property, to place Lea under arrest and to use force to restrain him.

87. The LMPD Officers' conduct was objectively unreasonable in light of Lea's clearly established constitutional rights.

88. The decisions of Conrad and Hibbs to promote the conduct performed by the LMPD Officers as alleged herein is outrageous, reckless and with blatant disregard for the rights of the public, including Lea.

89. The actions of the Defendants herein were of a nature which shocks the conscience.

90. The conduct of the Defendants violated clearly established constitutional rights of which a reasonable person would have known.

91. None of the LMPD Officers had an objectively reasonable basis to believe that Lea had recently committed, was engaged in, or was about to commit a criminal offense. These officers, acting under state law, deprived Lea of his constitutional rights and are thus subject to liability under 42 U.S.C. § 1983.

92. The Defendants unjustifiably deprived Lea of his constitutional rights without due process of law.

93. The conduct of the Defendants was intentional, was in gross violation of known constitutional standards for stops, searches, seizures and detainments, and their unlawful actions in this regard rendered it inevitable that Lea's constitutional rights would be violated.

94. That the Defendants' conduct caused Lea to suffer emotional distress and monetary damages

## COUNT 1: UNLAWFUL SEARCH & SEIZURE IN VIOLATION OF 42 U.S.C. § 1983 (LMPD OFFICERS)

95. The Fourth Amendment of the United States Constitution guarantees the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

96. The LMPD Officers' stopping of Lea's automobile and detaining Lea constitutes a "seizure" within meaning of Fourth and Fourteenth Amendments of the United States Constitution.

97. The LMPD Officers' ensuing search of Lea and his vehicle were "searches" within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution.

98. The searches were without probable cause, without a warrant, and without other exigent circumstances.

99. The seizures were without reasonable suspicion.

100. The searches and seizures were objectively unreasonable.

101. The physical and psychological intrusions upon Lea by the LMPD Officers were substantial. The stop, searches, and seizures entailed an unsettling show of authority, interference with freedom of movement, inconvenience, consumption of time, creation of substantial anxiety and the show of intimidation, harassment, bullying and threats.

102. The LMPD Officers violated Lea's rights guaranteed to him by the United States Constitution; they unlawfully searched and seized his person and vehicle in violation of the Fourth Amendment and denied him equal protection of the laws in violation of the Fourteenth Amendment.

## COUNT 2: UNLAWFUL TERRY STOP AND DETAINMENT IN VIOLATION OF 42 U.S.C. § 1983 (LMPD OFFICERS)

103. Plaintiff adopts and reiterates each and every allegation as if set forth fully herein and incorporates the same by reference.

104. The LMPD Officers performed an unlawful Terry stop on the Plaintiff in violation of his Fourth Amendment rights.

105. The totality of the circumstances did not provide the LMPD Officers with the reasonable suspicion required in order to detain Lea under *Terry*.

106. The conduct of the LMPD Officers in detaining Lea, searching him and his property, handcuffing him and keeping him restrained was objectively unreasonable.

107. The physical and psychological intrusions upon Lea by the LMPD Officers' Terry stop and subsequent conduct were substantial.

108. The stop, searches and seizures entailed an unsettling show of authority, interference with freedom of movement, inconvenience, consumption of time, creation of substantial anxiety and the show of intimidation, harassment, bullying and threats.

109. That the LMPD Officers acting under color of law, deprived Lea of his substantial rights secured by the United States Constitution and other laws, along with his constitutional right to equal protection of the laws.

## COUNT 3: EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983 (LMPD OFFICERS)

110. Plaintiff adopts and reiterates each and every allegation as if set forth fully herein and incorporates the same by reference.

111. That LMPD Officers' actions of using a restraint upon Lea was objectively unreasonable and excessive force.

112. That LMPD Officers used more force upon Lea than was reasonable to issue a citation and assess the situation.

113. That Lea committed no action at the scene to justify LMPD Officers use of force by removing Lea from the vehicle and handcuffing and detaining him for an extended period.

114. LMPD Officers did not communicate with commanding officers regarding their use of force on a citizen who was not under arrest, suspected of committing a violent crime, attempting to flee, nor actively resisting arrest.

115. The action is unjustifiable, intentional unlawful and malicious and the unreasonable use of deadly force against Lea by LMPD officers who were acting under the color of state law and in violation of Lea's substantial rights under the Fourth, Eighth and Fourteenth Amendments of the U.S. Constitution and Section 2 and 10 of the Kentucky Constitution. The action herein is also for the reckless, malicious and grossly negligent conduct of the LMPD officers in their deliberate acts of depriving Lea of his rights guaranteed by the United States Constitution under the Fourth Amendment, Eighth Amendment and the Fourteenth Amendment, Kentucky statutes and regulations, the Kentucky Constitution and all other applicable state and federal laws implemented to protect Lea, including but not limited to those within 42 U.S.C § 1983.

## COUNT 4: WRONGFUL ARREST IN VIOLATION OF 42 U.S.C. § 1983 (LMPD OFFICERS)

116. Plaintiff adopts and reiterates each and every allegation as if set forth fully herein and incorporates the same by reference.

117. The LMPD Officers lacked probable cause to arrest Lea.

118. At no time during their interactions with Lea was there ever a fair probability that Lea had committed or intended to commit a crime.

119. Despite this, the LMPD Officers handcuffed Lea for nearly 20 minutes, held him as an Arrestee and refused to permit him to leave.

120. This conduct constituted wrongful arrest in violation of 42 USC 1983.

## COUNT 5: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (LMPD OFFICERS)

121. Plaintiff adopts and incorporates each and every allegation as if set forth herein and incorporates the same by reference.

122. The LMPD Officers' conduct was intentional, extreme, outrageous, intolerable, egregious, and offends against generally accepted standards of decency and morality.

123. The LMPD Officers' training was intentionally deficient as they were trained to go into neighborhoods and harass innocent people and illegally search and seize people who incur a traffic infraction but are otherwise innocent any crimes.

124. That LMPD Officers' above-mentioned conduct was the direct and proximate cause of Lea's extreme mental distress, pain, and suffering resulting in physical manifestation of distress which has led to physical suffering.

125. That the mental distress, pain and suffering LMPD Officers inflicted upon Lea was severe in nature and continues to significantly affect his everyday life and require continued treatment.

## COUNT 6: NEGLIGENT TRAINING & SUPERVISION (CONRAD & HIBBS)

126. Plaintiff adopts and reiterates each and every allegation as if set forth herein and incorporates the same by reference.

127. That Conrad, and Hibbs failed to properly train and supervise the LMPD Officers so as to assure that these officers observed and followed applicable Constitutional and LMPD standards relating to the conduct of their duties, with said failures amounting to the deliberate violation of the rights of Lea and other black male drivers.

128. That Conrad, and Hibbs knew, or in the exercise of reasonable diligence should have known, that by failing to properly train and/or supervise LMPD officers and employing the "people, places, narcotics" initiative would result in the conduct of targeting motorists solely based on their race and subsequently illegally detaining and searching individuals and their vehicles without a reasonable basis.

129. That Conrad and Hibbs knew or in the exercise of reasonable diligence should have known, that LMPD facilitated the very type of misconduct at issue here by failing to adequately train, supervise, investigate, punish and discipline instances of similar misconduct by it officers, thereby  leading LMPD Officers to believe their actions will never be scrutinized and directly encourages abuses herein listed.

130. That Conrad and Hibbs, as supervisors, by way of their actions and failures to act, served to encourage the poor conduct of the LMPD officers by failing to manage and failing to train and for failing to recognize the obvious red flags in the violations of the rights of individuals based on unchecked and mandated bias of the department.

131. That the training and/or supervision of Conrad and Hibbs to the LMPD Officers was grossly inadequate, malicious, reckless, intentional, unjustified, unreasonable, and/or grossly negligent.

132. That the deficiencies in Conrad and Hibbs's training and/or supervision were direct and proximate causes of Lea's injuries and damages.

133. That the failure to train the LMPD Officers as to the constitutional limitation of search and seizure and use of force amounted to a deliberate indifference to constitutional rights of the citizens of Louisville.

## JURY DEMAND

134. Plaintiff hereby demands a trial by jury of all issues triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands this Court award them:

1.    For Summons and Complaint to be issued against the Defendants;

2.    That the Plaintiff obtains judgment against the Defendants in an amount the jury believes to be just, fair and equitable, given the facts and after hearing the issues in this case;

3.    For all such further and general relief which this Court deems just and proper;

4.    That a sum of money for compensatory damages be awarded to Plaintiff;

5.    That a sum of money for punitive against Defendants in an amount to be shown at trial;

6.    That a sum of money for nominal damages be awarded to Plaintiff;

7.    That attorney fees, the costs of pursing this action, pre-judgment and post-judgment interest be awarded to Plaintiff;

8.    For this Court to promptly order preservation and production of critical evidence;

9.      For this Court to determine whether it is electing to exercise jurisdiction and adjudicate the state law claims against the Defendants; and

10.     That the Plaintiff receives all relief to which he is entitled, including but not limited to the right to amend this action.

Respectfully submitted,

**SAM AGUIAR INJURY LAWYERS, PLLC**

*/s/ Lonita K. Baker*
Lonita K. Baker
Sam Aguiar
Josephine Buckner
1201 Story Avenue, Suite 301
Louisville, KY 40206
Telephone: (502) 400-6969
Facsimile: (502) 491-3946
lonita@kylawoffice.com
sam@kylawoffice.com
jbuckner@kylawoffice.com
*Counsel for Plaintiff*