UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00419-GNS-RSE

TAE-AHN LEA                                                              PLAINTIFF

v.

STEVE CONRAD, et al.                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Partial Motion to Dismiss (DN 13).  This matter is ripe for adjudication.  For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

On August 9, 2018, Plaintiff Tae-Ah Lea ("Lea"), a young African American male, alleges that he was driving a vehicle owned by his mother when he was pulled over by the Louisville Metro Police Department ("LMPD") as part of its "People, Places, and Narcotics" initiative practice by the Ninth Mobile Division of the LMPD.  (Compl. ¶¶ 1-2, DN 1).  As alleged by Lea, this initiative involves "biased policing" and "was implemented by the police chief in order to pay officers substantial overtime and give them carte blanche to target black males in certain neighborhoods by way of unconstitutional traffic stops, searches, seizures and detainments." (Comp. ¶ 2).  In particular, Lea alleges that "Ninth Mobile officers were essentially trained and encouraged to pull over vehicles with black males, search them, detain them, and then cross their fingers that the vehicle reveals drugs or unregistered guns."  (Compl. ¶ 2).

1

Prior to the traffic stop, Lea observed the LMPD officers Kevin Crawford ("Crawford"), Gabriel Hellard ("Hellard"), Jackson McNeil ("McNeil"), and Kiersten Holman ("Holman"), who were part of the Ninth Mobile Division, watch and follow him as he left a gas station.  (Compl. ¶¶ 25-26, 28).  Although he was allegedly not violating any law, the officers initiated the traffic stop for purportedly making an improper turn.  (Compl. ¶¶ 28-30, 34).  When questioned, Lea denied the existence of any drugs or guns in the vehicle.  (Comp. ¶¶ 38, 42, 45).  While Lea did not consent to a search of the vehicle, Crawford allegedly conducted a search without discovering any contraband.  (Compl. ¶ 47).  A drug dog then arrived, and the officers claimed that the dog "hit" on the vehicle for the presence of drugs.  (Comp. ¶ 46).  The search by the officers included "prying into, or manipulating of, concealed or hidden places in order to discover something criminal in nature."  (Compl. ¶ 52).  The dog was also introduced into the vehicle "allowing him to tear into the interior . . . ."  (Compl. ¶ 51).  During the search, Lea was handcuffed and not permitted to leave the scene.  (Compl. ¶¶ 57-58).  No contraband was discovered in the search, but Lea was cited for an improper turn, which was later dismissed.  (Compl. ¶¶ 69-70).

On June 10, 2019, this action alleging violations of his civil rights under 42 U.S.C. § 1983, and various state law claims.  (Compl. ¶¶ 95-133).  In the Complaint, Lea asserts claims against Chief Steve Conrad ("Conrad"), Major William Hibbs ("Hibbs"), Crawford, Hellard, Jeffrey McCauley, McNeil, and Holman in their individual and official capacities.  In the present motion, Defendants have moved to dismiss some of the claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(6).  (Defs.' Mot. Dismiss, DN 13).

## II.    JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction.  *See* 28 U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). The nonmoving party, however, must plead more than bare legal conclusions. *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).  In order to survive a Rule 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The pleading need not contain detailed factual allegations, but the nonmoving party must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted).

## IV.    DISCUSSION

In their motion, Defendants assert that the claims are precluded by immunity under federal and state law.  In addition, they assert that the allegations are insufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6).

### A.   <u>Immunity</u>

In the Complaint, Lea has sued Defendants in both their individual and official capacities. (Compl. ¶¶ 6-8).  What type of immunity defense may apply depends on the nature of a claim and the capacity in which a defendant is sued.

#### 1.   *Sovereign Immunity*

Defendants contend that the official capacity claims are barred by sovereign immunity. (Defs.' Partial Mot. Dismiss 3-4).  "[A] person sued in [his or her] official capacity stands in the shoes of the entity [he or she] represents." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Thus, the official capacity claims against Defendants are effectively claims against Louisville Metro.

##### a.   **Federal Claims**

Defendants assert that the federal claims against Louisville Metro are barred by the Eleventh Amendment.  (Defs.' Partial Mot. Dismiss 3).  Contrary to Defendants' argument, however, it is well established that Eleventh Amendment immunity applies only to state entities and its agencies, not to cities, counties, or other political subdivisions.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see also Jefferson Cty. Fiscal Ct. v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004) ("The United States Supreme Court, 'has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "slice of state power."'" (alteration in original) (citations omitted)). As this Court has previously held, "'[i]t is well established that a municipality, such as [Louisville/Jefferson County Metro Government] may be held liable under 42 U.S.C. § 1983.' Thus, the Louisville/Jefferson County Metro Government does not enjoy Eleventh Amendment

immunity because it is not considered an entity of the state." *Scherzinger v. Bolton*, No. 3:11-CV-11-H, 2013 WL 3166163, at *13 (W.D. Ky. June 20, 2013) (internal citations omitted). Accordingly, Lea's official capacity claims against Defendants are not barred by sovereign immunity.

### b.    State Law Claims

Defendants also seek dismissal of the official capacity claims under Kentucky law based upon sovereign immunity. (Defs.' Partial Mot. Dismiss 4-5). "Unlike federal courts, Kentucky courts recognize that 'a county government is cloaked with sovereign immunity.'" *Scherzinger v. Bolton*, No. 3:11-CV-11-H, 2013 WL 3166163, at *13 (W.D. Ky. June 20, 2013) (citing *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003)). "While Louisville Metro is not a county, it is a consolidated local government[,] [a]nd the Kentucky General Assembly has granted to consolidated local governments 'the same sovereign immunity granted [to] counties.'" *Thieneman v. Smith*, No. 3:17-cv-292-DJH, 2018 WL 1522357, at *4 (W.D. Ky. Mar. 26, 2018) (quoting KRS 67C.101(2)(e); *see also Reyes v. Salsman*, No. 3:15-CV-587-GNS-DW, 2016 WL 247582, at *2 (W.D. Ky. Jan. 20, 2016)). Because the official capacity claims against these Defendants are actually claims against Louisville which is cloaked with sovereign immunity, the Court will dismiss the official capacity claims under Kentucky law in Counts 5 and 6 of the Complaint.

### 2.    *Qualified Immunity*

As to the individual capacity claims, Defendants contend that those claims are barred by qualified immunity under both federal and Kentucky law. (Defs.' Partial Mot. Dismiss 5-10).

### a.    Federal Law

Under federal law, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). "Qualified immunity is a defense only to individual capacity claims." *Meogrossi v. Aubrey*, No. 3:09CV-00301-JDM, 2011 WL 1235063, at *6 (W.D. Ky. Mar. 31, 2011).

To determine whether a defendant is entitled to qualified immunity, a court must consider: (i) whether "based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred"; and (ii) if so, whether "the constitutional right [was] 'clearly established' at the time of violation." *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6220921, at *8 (W.D. Ky. Nov. 28, 2018) (citing *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002); *Saucier v. Katz*, 533 U.S. 194 (2001)). "To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in the [Plaintiff's] favor. The Plaintiff bears "the burden of showing that" the Defendants are 'not entitled to qualified immunity.'" *Hoskins v. Knox Cty.*, No. 17-84-DLB-HAI, 2018 WL 1352163, at *19 (E.D. Ky. Mar. 15, 2018) (citations omitted).

As the Sixth Circuit has recognized, however, it is inappropriate for a court to resolve the applicability of qualified immunity in ruling on motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although a[] [government official's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (internal quotation and citations omitted)). At this stage of the litigation, it would be inappropriate for the determine whether any claims are precluded by

6

qualified immunity without affording Lea the opportunity to conduct discovery.  Accordingly, the motion will be denied on this basis.

### b.    State Law

"Kentucky provides qualified immunity from tort liability for public officers and employees for '(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority.'"  *Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).  As this Court has noted, "[t]he qualified immunity doctrine essentially holds that officials charged with exercising judgment and discretion should not be held personally liable for damages for fear of discouraging independent action and thereby deterring effective performance of official duties."  *New v. Louisville Metro Gov't*, No. 3:15-cv-653-DJH, 2016 WL 1268299, at *4 (W.D. Ky. Mar. 30, 2016) (citing *Hany v. Monsky*, 311 S.W.3d 235, 245 (Ky. 2010)).  Notably, Kentucky's qualified immunity standard requires that defendants prove the subjective element of good faith, an element the Supreme Court of the United States rejected from the federal analogue in *Harlow v. Fitzgerald*, 457 U.S. 800, 816-18 (1982). *Howell*, 668 F.3d at 355 (citing *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)).

As discussed above, it is inappropriate to resolve the applicability of qualified immunity in ruling on a Rule 12(b)(6) motion.  *See Wesley*, 779 F.3d at 433.  Accordingly, the Court will deny the motion on this basis.

### B.    <u>Failure to State a Claim</u>

Besides raising defenses, Defendants challenge the sufficiency of some of the allegations in the Complaint.  (Defs.' Partial Mot. Dismiss 10-13).  In particular, alleged that the Court should

dismiss the parts of the Section 1983 claims and should dismiss some of the claims under Kentucky law.  (Defs.' Partial Mot. Dismiss 10-13).

### 1. *Federal Claims*

#### a. **Section 1983 – Failure to Train**

In their motions, Defendants challenge the sufficiency of the failure to train claims asserted against Conrad and Hibbs in Count 6 of the Complaint.  (Defs.' Partial Mot. Dismiss 10-11).  In essence, Lea alleges that the lack of training or supervision led to the violation of Lea's civil rights by the LMPD officers who were targeting young black men.  (Compl. ¶¶ 1, 126-33).

##### i. **Official Capacities**

To the extent that this claim is asserted against Conrad and Hibbs in their official capacities, it is a claim against Louisville Metro.  To state this type of claim against a municipality, a plaintiff must allege:  "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).  To satisfy the requirement of deliberate indifference, a plaintiff must either allege:  (1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or (2) "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . . ." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (citations omitted); *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997) (citation omitted).

Plaintiff's Complaint alleges a pattern of violations of the civil rights of young African American men by the LMPD through unlawful pretextual traffic stops as part of the "People, Places, and Narcotics initiative" implemented by the LMPD while Conrad served as Police Chief. (Compl. ¶¶ 2, 80, 82, 126-33). The traffic stop and search of Lea's vehicle were allegedly a result of that initiative. Thus, at this stage of the litigation, the allegations appear sufficient to survive Defendants' motion to dismiss.

### ii.      Individual Capacities

As to the individual capacity claims relating to the failure to train, the Sixth Circuit has held that a government official may be held individually liable under Section 1983 if he or she "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (quoting *Phillips v. Roane Cty.*, 534 F.3d 531, 543 (6th Cir. 2008)). Thus, to be liable, a defendant must have "at least implicitly authorized, approved, or knowingly acquiesced" in the alleged constitutional violation. *Id.* (quoting *Phillips*, 534 F.3d at 543).

In the Complaint, Lea specifically alleges that Conrad and Hibbs promulgated the People, Places, and Narcotics initiative that prompted a pattern of pretextual traffic stops in violation of the constitutional rights of young African American men. (Compl. ¶¶ 2, 80, 82, 126-33). The Complaint also alleges that Conrad and Hibbs failed to "adequately train, supervise, investigate, punish and discipline instances of similar misconduct by [LMPD officers] . . . ." (Compl. ¶ 129). When construed with the other allegations in the Complaint, these allegations are sufficient to allege individual capacity claims under Section 1983 against Conrad and Hibbs. Defendants' motion will be denied as to this claim.

> **b.  Section 1983 – Violations of Eighth and Fourteenth Amendments**

Defendants also seek dismissal of the excessive force (Count 1) and unlawful search and seizure (Count 3) claims under Section 1983 claims premised upon violations of the Eighth and Fourteenth Amendments.  (Defs.' Partial Mot. Dismiss 12-13).

The Eighth Amendment is only referenced in Count 3 of the Complaint, in which Lea asserts a claim for excessive force in violation of Section 1983.  (Compl. ¶ 115).  In his response, Lea does not address whether the Eighth Amendment properly provides a basis for any of his claims.  Thus, any argument to the contrary is waived, and the Court will dismiss Count 3 only to the extent that it is based on the Eighth Amendment.  *See Miller v. Reminger Co., L.P.A.*, No. 3:11-cr-315-CRS, 2012 WL 2050239, at *8 (W.D. Ky. June 6, 2012) ("As Defendants pointed out, by failing to contest these arguments, Plaintiffs conceded them."  (citing *Lucas v. Chance*, 121 F. App'x 77, 79 n.2 (6th Cir. 2005))).

In response to Defendants' arguments challenging Lea's reliance on the Fourteenth Amendment, Lea does not cite any contrary authority.  When a plaintiff asserts a Section 1983 claims for unreasonable search and seizure, "reliance on the Due Process Clause is misplaced . . . because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area."  *Hutson v. Felder*, No. 5:07-183-JMH, 2008 WL 4186893, at *4 (E.D. Ky. Sept. 10, 2008) (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005)).  Likewise, "[t]he Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise[] in the context of an arrest or investigatory stop of a free citizen . . . .'"  *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (second alteration in original) (citation omitted).  The Court will dismiss Counts 1 and 3 to the extent that they are premised upon the Eighth and Fourteenth Amendments.

10

2. ***State Law Claims***

a. **Kentucky Constitution Sections 2 and 10**

In their motion, Defendants seek dismissal of claims arising under Sections 2 and 10 of the Kentucky Constitution. (Defs.' Partial Mot. Dismiss 13). As Lea clarifies in his response, however, he does intend to assert such a claim, and Defendants' motion will be granted for this reason.[1] (Pl.'s Resp. Defs.' Partial Mot. Dismiss 10-11).

b. **IIED**

In Count 5 of the Complaint, Lea purports to assert an IIED claim. (Compl. ¶¶ 121-25). Defendants contend, however, that the allegations are insufficient and that any IIED claim is precluded by a traditional tort what Lea could have asserted. (Defs.' Partial Mot. Dismiss 11-12).

Under Kentucky law, IIED claims are generally disfavored and not available when a plaintiff may assert another traditional tort. *See Lee v. Hefner*, 136 F. App'x 807, 814 (6th Cir. 2005) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993)). An exception exists, however, when a defendant's conduct was "intended only to cause emotional distress . . . ." *Brewer v. Hillard*, 15 S.W.3d 1, 7-8 (Ky. App. 1999) (internal quotation marks omitted); *see also Green v. Floyd Cty.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011) ("The tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." (citing *Brewer*, 15 S.W.3d at 7-8)). In the Complaint, however, Lea has not sufficiently pleaded facts warranting the application of this exception. While he has alleged that the conduct was intentional, outrageous, resulted in injury, and was severe, he failed to allege that such conduct was solely intended to

_____

[1] These sections of the Kentucky Constitution are referenced in Count 3 of the Complaint, which asserts a claim of excessive force in violation of 42 U.S.C. § 1983. (Comp. ¶ 115).

cause extreme emotional distress.  (Compl. ¶¶ 121-25).  Because tort claims are available under Kentucky law for Lea's grievances, the IIED claim in Count 5 will be dismissed.

V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 13) is **GRANTED IN PART** and **DENIED IN PART**.  To the extent that Plaintiff's Section 1983 claims are premised on the Eighth and Fourteenth Amendments, those claims are **DISMISSED**.  Plaintiff's official capacity state law claims, the state law claim for intentional infliction of emotional distress (Count 5), and any state law claims based on Sections 2 and 10 of the Kentucky Constitution are **DISMISSED**.

Greg N. Stivers, Chief Judge
United States District Court

October 30, 2020

cc:    counsel of record