UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| TAE-AHN LEA | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. 3:19-CV-419-GNS- RSE |
| v. | ) | |
| | ) | |
| STEVE CONRAD, ET AL. | ) | |
| | ) | *ELECTRONICALLY FILED* |
| DEFENDANTS | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

This is a civil rights case bought under 42 U.S.C. § 1983 against multiple members of the Louisville Metro Police Department, individually, as well as against a former LMPD Chief and a former LMPD Division Major in Monell capacities. The case arises out of an August 2018 traffic stop of the Plaintiff. If one were to rely solely upon the traffic citation given to the Plaintiff, it would appear that the Plaintiff made a wide turn (he turned into the left-hand northbound lane, rather than the right-hand lane northbound lane, of a street), was given a ticket by officers and was sent on his way.[1] But the footage of this stop, which was recorded on the body cameras of the initial detectives who initiated the stop, reveals a much different scenario. Over the course of the stop, which was indeed initiated due to a simple wide turn, the Plaintiff was physically removed from the vehicle; was patted down/frisked for weapons twice; was forced to remain on scene while a K9 performed a walk around of the vehicle; was handcuffed and remained handcuffed for the remainder of the stop; and was ultimately given a citation that was subsequently dismissed.[2]

[1] Exhibit 1 – Traffic Citation
[2] Exhibit 2 – Courtnet confirmation of dismissal of citation

Altogether, the Plaintiff went through 25 minutes of hell before Detective Crawford sent him on his way as if nothing had happened.

The Plaintiff submits that the body camera footage, combined with the testimony obtained in this case, establishes that, as a matter of law, the Plaintiff's constitutional rights were violated, at a minimum, when: 1) Defendant Crawford executed a pat-down/frisk of the Plaintiff without the Plaintiff's consent and without a reasonable belief that the Plaintiff was armed and dangerous and 2) Defendant Crawford prolonged the traffic stop of the Plaintiff in a manner that grossly exceeded the boundaries of the initial basis for the stop.

**UNDISPUTED FACTS: TRAFFIC STOP OF THE PLAINTIFF**

On August 9, 2018 Tae-Ahn Lea was 18 years old. He was a high school graduate of Central, where he played the drums in the band for four years. As a senior, Lea was the homecoming king. He graduated barber school, but then obtained a full-time job selling cars for Oxmoor Auto Group. Lea has been the company's top salesperson every year since he has been employed. He has purchased multiple rental properties and manages the properties. He works approximately 80 hours a week. Lea has no criminal record and has always carried a valid and active driver's license, registration and insurance policy on vehicles he operates.

The date of the traffic stop was one of Lea's few days off. He was driving his mother's Dodge Charger, where he first went to Thornton's to purchase a snack. Footage from Thornton's confirms the same. The footage also shows that Defendants Crawford and Hellard arrive at the same Thornton's while Lea is there and depart the Thornton's shortly after Lea. Minutes later, while Lea is on his way home, Crawford and Hellard get behind him in an unmarked police vehicle. They follow him for a while, eventually reaching the intersection of 18th and Algonquin. At this point, the body camera footage begins.

**Body Camera Footage**

*Crawford Video*[3]

0:33 – Crawford activates his lights and sirens while in the left northbound lane of 18th Street.

0:34 to 0:47 – Lea activates his turn signal, merges into the right lane, slows down and stops on the side of the road once he has made it past two businesses on the side of the road.

1:00 – Crawford arrives at Lea's vehicle. Lea has his driver's side window down, as well as his other windows, and both of his hands are on the steering wheel.

1:15 – Crawford, after advising Lea that he was stopped for a turn violation, asks Lea if there are weapons or drugs in the car. Lea says there are not.

1:20 – Crawford asks for Lea's ID. Lea asks for permission to get it from his pocket. Crawford indicates he has no problem with that and again asks Lea to confirm he has no guns ("you ain't got any guns, right? You're good buddy.").

1:50 – Lea hands Crawford his driver's license.

2:00 to 2:07 – Crawford asks Lea for proof of insurance and Lea provides it.

2:07 to 2:21 – Lea's mother calls. Lea advises Crawford that she's been put on speaker phone.

[3] Video Link (Password "Crawford"): https://vimeo.com/640517493

2:21 to 2:43 – Crawford reaches into Lea's vehicle and opens the door from the inside. Lea asks Crawford why he's being taken out of the vehicle. Crawford does not answer the question. He grabs Lea's arms and pulls him from the vehicle. Lea does not resist.

2:47 - Crawford asks Lea for the third time if Lea has weapons or drugs on him. Lea states, for the third time, that he does not.

2:52 to 3:01 - Crawford turns Lea around, facing him against the car and tells Lea to spread his feet, preparing to execute a pat down/frisk. Lea asks Crawford why he is being checked and why he was taken out of the car. Crawford does not answer the questions. Crawford asks Lea for the fourth time if Lea has drugs or weapons on him. Lea, for the fourth time, says he does not.

3:01 to 3:18 - Crawford asks Lea if he minds if he checks Lea for drugs or weapons. Lea voices an objection and does not consent. Crawford states he is going to make sure that Lea does not have weapons. Lea says "No." Defendant Hellard states, "yea, we're allowed to pat you down" while Crawford proceeds to frisk Lea from neck to feet.

3:20 - Crawford escorts Lea behind the vehicle and states, "you say I can't search your car. So can I search your car?" Lea responds, "No."

3:37 to 3:47 - Crawford advises the K9 handler, who has arrived on scene, that Lea is "pretty nervous."

3:52 to 4:31 - Crawford walks around Lea's vehicle, looking through each of the four open windows into the interior and shining a flashlight throughout the interior. The vehicle is clean, with the only contents in plain view being items that are neither criminal in nature nor indicative of criminal activity.

4:30 to 4:43 - Crawford walks to McCauley, the K9 handler, advising him as a "heads up" that Lea's phone is on speaker. McCauley responds "on Live, go figure. It's like every car I search is on Facebook Live." Crawford proceeds to correct McCauley's assumption, advising him that it's Lea's mother on the phone.

4:43 to 6:26 - McCauley walks the K9 to the vehicle, walks the dog around the vehicle and then indicates that there was a positive indication on the vehicle. Hellard proceeds to handcuff Lea.

6:26 to 14:40 - The vehicle is searched by the K9 dog and then by Crawford and McCauley, after Crawford and Hellard were advised by the K9 that the dog did not identify any drugs in the vehicle. Crawford delays running background information on Lea until more than 10 minutes after the stop was initiated and after the K-9 had been deployed. The information received confirms that Lea had no criminal record.

14:52 to 15:32 - Hellard advises Crawford to perform a frisk of Lea. Crawford advises Lea to again spread his feet and frisks him for the second time.

16:39 - Another two detectives have arrived on scene. Crawford advises them that the stop was only for an "improper turn."

16:46 to 17:20 - Crawford appears to be filling out a citation.

17:28 to 24:00 - Crawford remains inside his unmarked vehicle, at times appearing to be filling out a citation, at times appearing to be doing things on his cell phone and at times appearing to be doing nothing at all.

24:20 - Crawford gives Lea a citation for an improper turn.

*Hellard Video*[4]

0:48 to 1:22 - Hellard visually canvasses the interior of Lea's vehicle through the open windows.

2:58 to 3:04 - Hellard states to Lea, "Yea, we're allowed to pat you down for weapons. Yea, we're allowed to do that." Hellard does not identify any reasonable suspicion requirements and also does not identify any reasonable suspicion that exists to warrant a pat down/frisk of Lea.

3:42 - Hellard advises Lea that, "we deal with violent crime all day every day. We're gonna stop thirty more people after you."

3:51 - Hellard tells Lea that, "your heart is beating through your chest." Lea's heart is not beating through his chest.

[4] Video Link (Password "Hellard"): https://vimeo.com/640527103

3:53 - Hellard appears to mock Lea, telling him "you're on the phone with your momma, narrating to your momma…oh my gosh…when you do all that, it's the same thing people do when they're trying to hide something."

6:27 - Hellard handcuffs Lea.

8:48 - Crawford is observable on video calling in the stop to dispatch and calling in Lea's license for the first time.

15:26 - Crawford does not find drugs or weapons in the vehicle search and the follow-up frisk. He begins to write a traffic citation, as the only offense is a turn lane violation. Lea, however, remains handcuffed for the next eight minutes following this point.

17:30 - Hellard knows the only offense for which Lea is being cited is the minor traffic offense, but declines to take Lea out of handcuffs. Instead, he advises Lea that he won't be in handcuffs much longer. Lea remains in handcuffs for another six minutes.

24:28 - Hellard ends his interaction with Lea by stating, "you've gotta get your car moved man. You can't stay there." Lea had given no indication that he intended to leave his car where had pulled over for the traffic stop.

*McCauley Video*[5]

6:15 - McCauley advises Crawford that the K9 dog only showed interest in Lea's wallet.

[5] Video Link (Password "McCauley"): https://vimeo.com/640537717

6:46 - McCauley finishes searching Lea's wallet, confirming there was no presence of narcotics.

6:46 to 8:56 - McCauley and Crawford proceed with searching Lea's vehicle. McCauley then stops, while Crawford continues to search the vehicle for several more minutes.

13:48 - Lea's mother, who has arrived at the scene, advises McCauley, "If it's a wrong turn, give him a ticket. You don't have to bring the dog out…" McCauley responds, "That's not why we're out here…we're a violent crimes unit. We're not narcotics."

14:48 - McCauley advises Lea' mother that his squad is told to be there and that, "what we do…one of the aspects of what we do is we focus on traffic stops."

17:52 - McCauley's sergeant, who has been monitoring the stop, gets on the radio with McCauley after his interaction with Lea's mother, stating to McCauley "I don't think she heard one word you said man." McCauley proceeds to converse with other detectives who have arrived on scene, advising them that Lea's mother "just keeps making stuff up," that she will post it online and get 1,000 likes and that "it's a disease."

## SUMMARY OF TESTIMONY

### *Crawford*[6]

Detective Crawford was deposed on March 24, 2021. Pertinent testimony includes the following:

[6] Exhibit 3: Kevin Crawford Deposition Transcript

39:5 to 39:11 - When Crawford initially approached Lea, the only suspected criminal offense was the minor traffic offense.

39:14 to 39:21 - Crawford identified Lea's signs of nervousness as his breathing pattern and his shaking fingertips on the steering wheel.

39:22 to 41:1 - Crawford confirms that Lea was courteous to him throughout the time he was in the vehicle and that Lea was compliant with all of Crawford's requests.

41:2 to 41:17; 46:12 to 47:7 - Crawford confirms that he never identified anything which would have led him to believe Lea was armed, was in possession of a firearm or in possession of any other weapon. Crawford states he observed a bulge on Lea outside the vehicle, but clarifies that he thought it was just caused by the shirt Lea was wearing. He didn't think it was a gun because it was small.

44:9 to 44:21 - Crawford is unable to identify why he would not advise Lea why he was being removed from the vehicle.

44:23 to 45:8 - Crawford states that he asked Lea if Lea had weapons four different times four different times due to interruptions, but cannot recall the interruptions.

45:9 to 46:11 - Crawford cannot identify any reason he had to believe that Lea was armed. Crawford confirms that if had he thought Lea was armed, he would not have permitted Lea to go into his pocket for his driver's license.

47:7 to 47:16 - Crawford doesn't recall why he asked Lea two more times if he had any weapons on him once Lea was up against the vehicle.

51:5 to 52:12 - Crawford confirms that his only indicators of criminal activity were Lea's nervousness and that there was a baseball bat in the vehicle. Crawford states that a bat or stick is a weapon because it could be used to harm someone, but then states that even though a fork could also be used to hurt someone, he wouldn't consider it a weapon.

58:11 to 58:13 - Crawford doesn't recall why he didn't just write Lea a ticket and let him go.

63:24 to 64:14 - Crawford states that Lea's demeanor was the only suggestion to Crawford that Lea could have been armed and dangerous. He doesn't recall anything that led him to believe Lea had drugs.

*Hellard*[7]

26:22 to 26:24 - Hellard does not know why a K-9 sniff was requested on Lea's vehicle.

70:13 to 70:22 - Hellard does not know why Crawford pulled Lea out of the vehicle.

[7] Exhibit 4: Gabriel Hellard Deposition Transcript

88:25 to 89:12 - Hellard agrees that getting pulled over can be a nervous situation for anyone. Hellard states it was not unreasonable for Lea to have been nervous during the traffic stop.

*Chief Conrad*[8]

32:24 to 34:10 - Conrad, after viewing the Lea stop, had multiple concerns. He was concerned with the way Crawford pull Lea out of the car. He was concerned with Crawford performing a pat-down of Lea, even though Lea told him "no" when Crawford asked if he could search him. Conrad was concerned with the length of the traffic stop, as officers aren't allowed to delay a traffic stop longer than it would take them to finish the stop under the initial reasons for the stop.

53:12 to 53:22 - Conrad states that he understands why Lea lost trust in law enforcement as a result of the stop. Conrad states that he would have liked to have seen Crawford behave differently during the stop. Conrad further states that it is fair to state that the way Lea was treated is not the way Conrad would want himself to be treated in a similar situation.

## STANDARD OF REVIEW

Summary judgment is warranted when the moving party shows that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see also *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986). Further, it must be noted that a mere disputed fact is not sufficient to defeat a motion for summary judgment; the fact must be material, meaning that it might change the outcome of the suit pursuant to governing law. "When the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for

[8] Exhibit 5: Steve Conrad Deposition Transcript

trial" and summary judgment must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).

## ARGUMENT

1. Detective Crawford's pat down of Tae-Ahn Lea was an unconstitutional search

Detective Crawford could not perform a lawful pat down of Tae-Ahn Lea unless he either had Lea's consent or had a reasonable suspicion that Lea might be armed and dangerous. *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *Knowles v. Iowa*, 525 U.S. 113, 118 (1998); following *Terry v. Ohio*, 392 U.S. 1 (1968)). Reasonable suspicion is based on the totality of the circumstances and, ultimately, turns on whether "a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Noble*, 762 F.3d 509, 521-22 (6th Cir. 2014) (quoting *Terry*, 392 U.S. at 27).

Crawford's primary alleged justification for patting down and frisking Lea was nervousness. The only other reason given by Crawford was that Lea had a bat in his vehicle.

*Q. What criminal activity was present with Tae-Ahn Lea?*

*A. There were indicators of criminal activity with Tae-Ahn Lea.*

*Q. And those indicators were what?*

*A. His nervousness, him lying to us about the weapon.*

*Q. What else?*

*A. That's all that I can recall at this time.*[9]

As for the bat, which was a miniature replica, it remained in Lea's vehicle while Lea was pat down outside the vehicle. Lea had already confirmed the bat's presence in the vehicle and had

[9] Crawford Deposition 51:11 – 51:19

made no efforts or furtive movements suggesting that he ever had any intentions of using the bat. In fact, the video shows that Lea's hands remain stationery on the steering wheel, other than the situations where he gets consent from Crawford to get his license from his pocket and his insurance card from the visor. It cannot be disputed that, had Crawford believed that Lea was potentially armed with a weapon, he would not have permitted Lea to go into his pockets for a driver's license.

Crawford's claim that Lea's nervousness served as grounds for Crawford to reasonably believe that Lea was armed and dangerous fails for at least two reasons. The first is Lea's actual demeanor between the time he is first depicted on camera footage and the time of the initial pat-down/frisk. Contrary to Crawford's assertions, Lea is breathing normally. Lea's heart is not "beating through his chest." Lea's hands are not "trembling on the steering wheel." Lea's voice is calm. His demeanor is flat. Lea is not evasive to questioning, is not uncooperative and, even while Crawford is unwilling to advise Lea as to why he's being physically removed from the vehicle, Lea remains compliant. By the time Lea is patted down, he has advised Detective Crawford four times that he is not armed and does not have drugs. Lea has also by this point gone through both of his pockets, in plain view while Crawford observed, to obtain his license. Simply put, the only reasonable conclusions from the documented events are that Crawford either fabricated his justification for a pat-down or that he grossly misperceived the sequence of events leading up to that occurrence.

The second reason that Crawford's stated grounds for patting Lea down fails is that even if Lea had been nervous, this does not establish a reasonable, stand-alone basis for a pat-down/frisk. "Time and again, we have said that nervousness—even extreme nervousness—'is an unreliable indicator' of someone's dangerousness, 'especially in the context of a traffic stop.'" *Id.* at 522-523 (quoting *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004)); *see*

*also, United States v. Wilson*, 506 F.3d 488, 495-96 (6th Cir. 2007) ("Nervous behavior, standing alone, is not enough to justify a *Terry* search."); *United States v. Henry*, 429 F.3d 603, 613 (6th Cir. 2005) ("[W]e have repeatedly discounted the value of nervousness in the reasonable-suspicion calculus."). It is simply human nature that "many citizens become nervous during a traffic stop, even when they have nothing to hide or fear." *Richardson*, 385 F.3d at 630-31.

2. <u>The duration of the stop was a prolonged seizure in violation of the Fourth Amendment</u>

Detective Crawford's stop of Lea was for a minor traffic violation. To remain a lawful seizure, the stop had to be conducted in within a reasonable amount of time. For traffic stops made due to observation of a minor traffic violation, "the purpose of the stop is limited" and the resulting detention should be brief. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality) (the duration of the stop must not be "longer than is necessary to effectuate the purpose of the stop.").

Crawford does not suggest that the stop was not prolonged by using a K9. However, Crawford's former Major, Defendant William Hibbs, does attempt to suggest that K9 usage did not extend stops in the Ninth Mobile Division. According to Hibbs, the "beauty" of the Ninth Mobile traffic stop model is that the detectives have a K9 handler ready to rapidly deploy to a traffic stop scene.[10] This mechanism is part of the Division's methods of identifying subjects by appearance, stopping them for minor offenses and using the stop as a mechanism to wiggle into the parameters of *Illinois v. Caballes*, 543 U.S. 405, 409, (2005) (permitting officers to use a drug-detection dog on a lawfully stopped vehicle). However, the boundaries of this tactic only extend so far, as the use of such a dog is an unconstitutional seizure when it extends the traffic stop beyond the time it would take to issue the traffic citation. *United States v. Bell*, 555 F.3d 535, 539 (6th Cir.

[10] Exhibit 6: William Hibbs Deposition 44:9 – 44:16

2009). (if the use of a drug-detection dog would "detain the motorist any longer than is reasonably necessary to issue the traffic citation, . . . the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct."). It is undisputed that Lea was stopped for a violation that, at most, would result in the issuance of a citation. The process was simple: run Lea's license, confirm he did not have warrants, validate the registration and send Lea on his way with a warning or a ticket. Because there were two detectives on scene, this process would be even quicker. Once the purpose of the traffic stop is completed, "the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Perez,* 440 F.3d 363, 370 (6th Cir. 2006) (citation omitted). It is undisputed that Lea's stop was extended for a time frame well above and beyond that of a normal stop of a wide turn.

Defendant Crawford's efforts to establish a reasonable basis for his prolonged extension of the stop fail. Detective Crawford asserts that the traffic stop of Lea justified further initial detention due to "criminal indicators." The "indicators" Crawford claims to have been present were limited to Lea's alleged "nervousness" and the presence of a bat in his vehicle.

*Q. To the best of your knowledge, who requested for Detective McCauley to have that sniff done?*

*A. I did.*

*Q. And why did you?*

*A. Because I believed something criminal was inside the vehicle, criminal in nature.*

*Q. And just so I understand correctly, that's because of sign -- or indicators of nervousness, of Tae-Ahn not telling you that there was a bat in the vehicle?*

*A. Yes, sir.*

*Q. Were those the two indicators?*

*A. Yes, sir.*[11]

As stated previously, neither of these factors, even if present, establish a reasonable basis to suspect criminal activity, let alone the presence of narcotics in Lea's vehicle. Rather, the only suspected offense of Lea, from initiation of the stop through the request for a K9 sniff of Lea's vehicle, was and remained that Lea had turned into the left-hand northbound lane of 18th Street, rather than the right-hand northbound lane. As such, once Lea had been removed from his vehicle, all tactics and actions, other than writing Lea a citation, were objectively unreasonable. The seizure was unconstitutionally prolonged for the time it took for all other actions to be conducted on the scene. This includes, at a minimum, prolonging the stop through a frisk; waiting for a K9 to arrive; performing a K9 sniff; K9 search of the vehicle; subsequently searching the vehicle after the K9 failed to indicate within the vehicle; the second frisk of Lea; and the several minutes in which Crawford was in the vehicle, doing nothing, while Lea remained in handcuffs. Ultimately, Defendant Crawford understands his actions of frisking Lea (twice), calling for a dog sniff, prolonging Lea's stop and subjecting Lea to a nightmare-causing experience were objectively unreasonable.

*Q. Why didn't you just write Tae-Ahn a ticket and let him go?*

*A. I don't know, sir. I don't recall.*[12]

At its core, this case presents substantially similar concerns to those raised in this Circuit within *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008). There, an officer stopped a subject for a tag-light violation. The officer had what he needed to write a citation for the tag-light violation

[11] Crawford Deposition 55:15 – 56:3
[12] Id. At 58:11 – 58:13

and for no proof of insurance. "From that point forward, the purpose of the traffic stop would have been completed almost immediately, in the time necessary for Officer Holmes to issue the citation and send Blair on his way." *Id.* But rather than doing so, the officer informed the subject that he believed drugs were in the car and that he would call a canine unit to the scene. The Court concluded that this action extended the scope and duration of the stop beyond that necessary to issue a citation for a tag-light violation and that because the officer had not developed reasonable, articulable suspicion of criminal activity by that point, the remainder of the stop violated the Fourth Amendment. *Id.*

## **CONCLUSION**

The video footage of the traffic stop at issue is undisputed: Tae Ahn Lea, at most, made a wide turn. He did nothing to cause an officer to reasonable suspect that he was armed or dangerous. Lea did not consent to being frisked. Lea did not consent to any of the actions that led this stop to extend nearly half an hour, when it should have been a two-minute process. Crawford's claims that perceived "nervousness" and the presence of a baseball bat in the car do not, as a matter of law, establish an objectively reasonable suspicion that Tae Ahn was armed and dangerous while he was detained outside the vehicle. The undisputed facts of the case demonstrate that this was a stop for a minor violation. Nothing occurred within the course of the stop that permitted Defendant Crawford to execute a search on Lea and to extend the seizure of Lea beyond the time which it takes to stop and cite an individual for a minor traffic offense.

For the reasons herein, the Plaintiff respectfully submits that partial summary judgment is proper for the Fourth Amendment violation claims against Defendant Crawford.

Respectfully submitted,

SAM AGUIAR INJURY LAWYERS, PLLC

*<u>/s/ Sam Aguiar</u>*
Sam Aguiar
Lonita K. Baker
1900 Plantside Drive
Louisville, KY 40299
Telephone (502) 400-6969
Facsimile: (502) 491-3946
sam@kylawoffice.com
lonita@kylawoffice.com
*Counsel for Plaintiff*