


# Louisville Metro Police Department

## Traffic Stop Series 3 of 4

### Can an officer lawfully "pat-down" a driver during a traffic stop?

**SCENARIO:** An officer initiates a traffic stop for a violation of a traffic law and orders the driver to exit the vehicle. The officer believes he may need to perform a "Pat Down" of the driver.

**ANALYSIS:** *Terry v. Ohio* 392 U.S.1, (1968) The United States Supreme Court stated:

"It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."

"And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search,'"

The Court concluded:

"… we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is **armed and presently dangerous** to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

"A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Warden v. Hayden, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782 (1967) (Mr. Justice Fortas, concurring). Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion"

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has **reason to believe that he is dealing with an armed and dangerous individual**, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 174—176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035 (1878).[23] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. Brinegar v. United States, supra."

**CONCLUSION:** The United States Supreme court in *Terry* held where a police officer observes unusual conduct which leads him/her to reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he/she identifies themselves as a police officer and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his/her reasonable fear for his/her own or others' safety, he/she is entitled for the protection of himself/herself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault the officer.

**QUESTION:** For the officer's protection and others, may he pat down a driver stopped for a traffic infraction whom the officer reasonably believes may be armed and dangerous?

**ANSWER:** Yes. An officer may perform a **limited** search/"pat-down" of the driver. This pat down is not permitted merely as a matter of routine, or simply because this stop occurred in a high crime area, but the officer must be able to articulate why he believed the driver to be both armed AND dangerous and is restricted only to checking for weapons. The officer may not manipulate the person's clothing or enter his pockets.

 

**Louisville Metro Police Department**

**Training Bulletin – May 2018**

### "Mutual Respect First. Object Later" Brochure
**Completed by LMPD Advanced Training Section**

The **"Mutual Respect First. Object Later."** brochure is an excellent resource LMPD has published to assist citizens with a better understanding of how to respond when stopped by the police. It is available in both English and Spanish. In the brochure, citizens are reminded:

> *The street is no place to argue or resist the commands of a police officer. The vast majority of police interactions never result in confrontation or use of physical force against a citizen. Yet arguing with the officer at the scene increases the potential for a problem and raises the risk of a dangerous, physical confrontation. So when stopped by the police remember the saying, "Mutual Respect First. Object Later."*
>
> *The officer is required to be respectful to you. Please be respectful back to them, even if you feel as though you are being unjustly stopped or questioned.*
>
> *If you believe you were unfairly cited or arrested you can object the charge in court. You may also object to the stop by requesting a supervisor to the scene or by filing a complaint with a supervisor after the stop is over. If you believe the officer acted improperly or your rights were violated, you may also object to the stop by filing a formal complaint with the LMPD Professional Standards Unit.*

Officers should comply with the following six points from the brochure which highlight what the citizens' rights are at the scene:

- *You may ask the officer why you were stopped*
- *If the officer is not uniformed, you may ask for a uniformed officer to the scene.*
- *You may ask for the officer's code number and name. Officers are required to give you this information if requested to provide it.*
- *If the officer refuses to provide you with their name and code number, be sure to remember the location, date and time of the incident and report that information.*
- *You may ask for a supervisor to respond to the scene*
- *If you observe an officer do something inappropriate but it does not involve you, do not interfere in the incident. When everything has calmed down, politely ask for the officer's name and code number. If he/she does not provide it walk away and document the date, time, and location of the incident and report that information.*

Local pastors have distributed the brochure throughout the community as part of their **"Code Green"** campaign which encourages safe interactions with police. Because the brochure cover features a man wearing a green shirt with his hands up, the pastors utilize the brochure as a reminder of the **"Code Green"** campaign. Therefore, officers may encounter citizens who reference **"Code Green"** during the stop as a way of informing the officer at the outset that they are planning to show "Mutual Respect."

**CONCLUSION** The street is no place to argue. Citizens are encouraged to be compliant and show respect to an officer, however, officers are required to be professional, courteous and respectful at all times. If a citizen feels the need to object to the stop, they should do so at a later time to eliminate an escalated response by police. When both police and citizens are mutually respectful the encounter should be safe and free from incident. To assist in educating the public, officers can provide the *"Mutual Respect. First Object Later."* brochure which outlines these procedures.



**Louisville Metro Police Department**

**Traffic Stop SOP 7.12.7**

## Strategies and Tactics of Patrol Stops (S.T.O.P.S.)
**Completed by the Advanced Training Section**

**SCENARIO:** An officer initiates a traffic stop for violating a traffic law.

**ANALYSIS:** Traffic stops can be very serious situations for officers. Officer discretion and caution should be exercised while conducting traffic stops. Unknown and high-risk situations can create tensions for both officers and violators. Officers will use caution while approaching violators in order to evaluate the behavior of the violator and the seriousness of the situation. All traffic stops should be based upon reasonable suspicion or probable cause.

LMPD officers are required by SOP 7.12.7 (Traffic enforcement) to observe the Strategies and Tactics of Patrol Stops (S.T.O.P.S.) lesson plan, whenever possible:

- The officer will greet the violator and identify themselves by name.
- The officer should explain the reason for stopping the violator.
- The officer will ask the operator of the vehicle if there was a legitimate reason for doing what they did.
- The officer will ask where the driver's license, insurance, and registration information is located before asking them to retrieve any of the items.
- The officer will give instructions to the violator to follow (e.g., remain in the vehicle and buckle up) as they review documentation and decide what action to take.
- The officer will issue the appropriate warning or citation and let the violator know that the traffic stop is over.

**CONCLUSION:** The Strategies and Tactics of Patrol Stops (S.T.O.P.S.) training was developed to provide officers the tactics and knowledge to safely conduct vehicle traffic stops, teach survival from both vehicular and felonious assaults, and to reduce citizen complaints.

Providing citizens with an explanation as to why they were stopped allows the citizen to understand why police officers took an action, reduces the potential perception of bias on the part of the police, and improves relations with the community.

Therefore, officers should make a reasonable effort to explain to the citizen why they were stopped unless doing so would undermine an investigation or jeopardize the officer's safety.

**QUESTION:** Why is it important for an officer to follow the S.T.O.P.S. procedures when possible?

**ANSWER:** Following the S.T.O.P.S. procedures not only improve officer safety but also help to avoid citizen complaints and conflicts with violators by reducing the potential perception of officer bias. This helps citizens feel they have had a fair and just encounter with police officers.

**RESOURCES:** LMPD SOP 7.12.7 STRATEGIES & TACTICS OF PATROL STOPS

Magnuson, Robert, 2013, <u>Strategies and Tactics of Patrol Stops</u>, S.R. Enterprises.




**Louisville Metro Police Department**

**Weekly Training Bulletin – September 2015**

### K-9 Sniff's Related to Traffic Stops

Compiled by: Sergeant Matthew Glass

**SCENARIO:** An officer makes a traffic stop based on a violation of a traffic statute or ordinance. During the stop, the officer requests a K-9 to perform an exterior sniff of the detained vehicle.

**ANALYSIS:** The United States Supreme Court on April 25, 2015 announced its decision in Rodriquez v. United States. The holding of the court is an officer may not extend a traffic stop any longer than the time it reasonably takes to complete the mission of the traffic stop, unless there is generated reasonable suspicion of criminal activity after the stop.

The Court also held that a dog sniff is not fairly characterized as part of the officer's traffic mission. Beyond determining whether or not to issue a traffic citation, issue a warning, make an arrest or release the person detained, the officer's inquiry may involve checking the operator's license, determining whether or not there are outstanding warrants, inspecting the vehicle's registration and verifying proof of insurance. These checks serve the same objective as enforcement of the traffic code.

In Rodriquez, the officer observed a vehicle veer off the roadway onto the shoulder and then veered back onto the highway. The reasonable suspicion for the stop was state law prohibited driving in the shoulder of the road. After questioning the driver, the officer began writing a warning and called for a K-9. The dog alerted 7-8 minutes after the warning ticket was issued. While there was reasonable suspicion for the traffic stop, there was no determination by the lower courts whether there was additional reasonable suspicion that would allow the traffic stop to be extended.

**CONCLUSION:** An officer may not extend the length of a traffic stop beyond the time it takes to address the original mission of the stop to facilitate a K-9 sniff of the vehicle- UNLESS additional and independent reasonable suspicion has been established to justify the prolonging of the stop.

The issue in Rodriquez centers on the *prolonging of the stop*. Should a K-9 unit arrive on the scene while the original mission (writing a citation, etc.) is still being performed, a sniff would be allowed because it does not prolong the initial stop.

**QUESTION:** Can an officer prolong a traffic stop in order to wait for a K-9 unit to arrive and perform a walk-around sniff for drugs?

**ANSWER:** NO- unless, the officer has additional reasonable suspicion developed during the traffic stop beyond that necessary for the original stop.



# Louisville Metro Police Department

## Traffic Stop Series 4 of 4

**During a traffic stop, may an officer call K-9 to do a dog sniff of the vehicle?**

**SCENARIO:** An officer initiates a traffic stop for a violating a traffic law and would like to have a K-9 drug dog walk around the vehicle and perform an open air search.

**ANALYSIS:** *Rodriguez v. United States* 135 S.Ct.1609 (2015)

The United States Supreme Court in *Rodriguez* stated:

Police may not extend an otherwise-completed traffic stop, absent additional reasonable suspicion, in order to conduct dog sniff.

*"A routine traffic stop is more like a brief stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, than an arrest, see, e.g., Arizona v. Johnson, 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694. Its tolerable duration is determined by the seizure's "mission," which is to address the traffic violation that warranted the stop, Illinois v. Caballes, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 and attend to related safety concerns. Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."*

*"Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. See Delaware v. Prouse, 440 U.S. 648, 658–659, 99 S.Ct. 1391, 59 L.Ed.2d 660. Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission."*

**CONCLUSION**: The United States Supreme Court in *Rodriguez* held a police traffic stop exceeding the time needed to handle the matter for which the stop was made in order to wait for a K-9 dog to perform a search violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation.

**QUESTION:** An officer initiates a traffic stop for a violation of traffic laws. Can that officer have a K-9 drug dog walk around the vehicle and perform a dog sniff?

**ANSWER:** Only if the dog sniff does not delay the traffic stop. The officer CAN NOT DELAY the traffic stop waiting for K-9 to show up or complete the dog search.




# Louisville Metro Police Department

## Traffic Stop Series 1 of 4

### Ordering a DRIVER from a vehicle during a traffic stop

**SCENARIO:** An officer initiates a traffic stop for a violating a traffic law and considers ordering the DRIVER from their vehicle.

**ANALYSIS:** The United States Supreme Court in Pennsylvania v. Mimms 434 U.S. 106 (1977) stated:

*"Establishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault."*

*"We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." Terry v. Ohio, supra, 392 U.S. at 23, 88 S.Ct. at 1881. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile."*

*"Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as de minimis. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a " 'petty indignity.' " Terry v. Ohio, supra, 392 U.S. at 17, 88 S.Ct. at 1877. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety."*

**CONCLUSION:** The United States Supreme court in *Mimms* discussed safety when allowing a police officer to lawfully order a driver to exit his/her vehicle.

**QUESTION:** Can a police officer, order a driver from their vehicle?

**ANSWER:** Yes. The United States Supreme Court in *Mimms* grants this authority.

**RESOURCES:** *Pennsylvania v. Mimms 434 U.S. 106, (1977), Terry v. Ohio, 392 U.S. 1 (1968)*



# Louisville Metro Police Department

## Traffic Stop Series 2 of 4

**Ordering a PASSENGER from a vehicle during a traffic**

**SCENARIO:** An officer initiates a traffic stop for violating a traffic law and considers ordering the driver AND the PASSENGERS from the vehicle.

**ANALYSIS:** The United States Supreme Court in *Pennsylvania v. Mimms 434 U.S. 106 (1977)* granted authority to remove a DRIVER from their vehicle.

The United States Supreme Court in *Maryland v. Wilson 519 U.S. 408 (1997)* addressed the issue of ordering a PASSENGER from a vehicle when it said:

*"On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger. Regrettably, traffic stops may be dangerous encounters. In 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops. Federal Bureau of Investigation, Uniform Crime Reports: Law Enforcement Officers Killed and Assaulted 71, 33 (1994). In the case of passengers, the danger of the officer's standing in the path of oncoming traffic would not be present except in the case of a passenger in the left rear seat, but the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer."*

*"On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver."*

*"In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. **We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop**."*

**CONCLUSION:** The United States Supreme court in *Wilson* discussed safety concerns when allowing a police officer to lawfully order a PASSENGER to exit a vehicle when it has been stopped for the violation of a traffic law.

**QUESTION:** Can a police officer order a PASSENGER from a vehicle during a traffic stop?

**ANSWER:** Yes. An officer making a traffic stop may order passengers to get out of the car pending completion of the stop. The United States Supreme Court in *Maryland v. Wilson* grants this authority.

**RESOURCES:** *Pennsylvania v. Mimms 434 U.S. 106, (1977), Terry v. Ohio, supra, 392 U.S. 1 (1968)*