# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number: 7.12<br>Effective Date: 08/09/04<br>Prv. Rev. Date: 08/06/18<br>Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards:<br>KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12**     **TRAFFIC STOPS AND ENFORCEMENT** (KACP 22.1)

**7.12.1**     **TYPES OF TRAFFIC STOPS AND ENFORCEMENT (**KACP 22.3, 22.4a-b, 23.2)

Traffic enforcement serves a legitimate community purpose. The primary goal of traffic enforcement is to enhance public safety through voluntary compliance with traffic laws. Traffic enforcement can help reduce factors, such as speeding, intoxicated driving, inattentive driving, or other violations that contribute to crashes or other dangerous situations for the public. It is the policy of the Louisville Metro Police Department (LMPD) that traffic stops and enforcement are conducted in an impartial and courteous manner, free of bias, and in accordance with applicable laws and the Standard Operating Procedures (SOPs) of this department.

All officers, regardless of rank or assignment, may enforce traffic laws. Officer discretion is encouraged when enforcing traffic laws. In general, traffic stops should be focused on traffic safety. An officer should consider the severity of the violation and the safety of the location of the stop when making the decision to stop a motorist.

For the safety of officers and the public, generally two (2) units should respond to a traffic stop. Having too many officers on-scene can cause undue public concern. If the officers on-scene of a traffic stop have a reasonable belief that an elevated safety risk exists, additional units may be requested to respond. Only the number of officers needed to deal with the individual situation should be on-scene.

Traffic stops are divided into two (2) categories:

- **Safety Stops:** Safety stops are conducted with the goal of enforcing the rules of the road to decrease the likelihood of collisions or other traffic safety concerns. These types of stops include offenses such as speeding, disregarding a traffic control device, reckless driving, Driving Under the Influence (DUI), etc. In addition, specially-trained officers may stop and inspect commercial vehicles to ensure public safety through the enforcement of commercial vehicle laws and regulations. All safety stops must be based upon a reasonable suspicion the person is committing, or has committed, a traffic violation.

- **Investigatory Stops:** Investigatory stops are conducted to provide an officer the opportunity to stop the motorist to investigate a potential crime other than a mere traffic violation. Investigative stops must be based upon a reasonable suspicion the person has committed, is committing, or is about to commit a crime. Officers must evaluate the totality of the circumstances. Stops based upon the subject's nervousness alone, the suspect's prior criminal history alone, or presence in a high-crime area alone are not sufficient factors, by themselves, to establish a reasonable suspicion.

Based upon an officer's experience, observations, and the totality of the circumstances, a safety stop may evolve into an investigatory stop.

Officers may choose to give a verbal or written warning, issue a citation, or arrest a violator. Officers will consider the totality of the circumstances, the uniqueness of the violation, the driver's state of mind, and the seriousness of the violation when deciding which enforcement option to exercise. Any actions taken by the officer will be commensurate with applicable laws and LMPD SOPs.

Officers should refer to the Kentucky Revised Statutes (KRS) regularly in order to stay informed of newly enacted laws and/or regulations concerning motor vehicle violations and citations.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   7.12 |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| **Chapter:** Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| **Subject:**  Traffic Stops and Enforcement | |

### 7.12.1      TYPES OF TRAFFIC STOPS AND ENFORCEMENT (CONTINUED)

To help decrease the number of traffic violations and accident fatalities, traffic safety tips are available on the LMPD website.

### 7.12.2      VIOLATOR CONTACT (KACP 22.5)

Traffic stops can be very serious situations for officers and the people they stop. Unknown and high-risk situations can create tensions for both officers and violators. As a result, officer discretion and caution should be exercised while conducting traffic stops. Officers will be vigilant to factors that pose a threat to officer or public safety. Officers will use caution while approaching violators in order to evaluate the behavior of the violator and the seriousness of the situation. The officer will always maintain a professional attitude and demeanor. Verbal contact should be accomplished in a fair, impartial, and courteous manner.

Providing citizens with an explanation as to why they were stopped allows citizens to understand why police officers took an action, reduces the potential perception of bias, and improves relations with the community. Therefore, officers should make a reasonable effort to explain to the citizen why they were stopped, unless doing so would unreasonably undermine an investigation or jeopardize the officer's safety.

Officers making contact with violators during a traffic stop will observe the following during the course of the stop, whenever possible:

- The officer will greet the violator and identify himself/herself by name.
- The officer should explain the reason for stopping the violator.
- The officer will ask the operator of the vehicle if there was a legitimate reason for doing what he/she did.
- The officer will ask where the driver's license, insurance, and registration information is located before asking him/her to retrieve any of them.
- The officer will give instructions to the violator to follow (e.g. remain in the vehicle and buckle up) as he/she reviews documentation and decides what action to take.
- The officer will issue the appropriate warning or citation and let the violator know the traffic stop is over.

### 7.12.3      REMOVING OCCUPANTS FROM A VEHICLE

For the safety of the officer and the subject, occasionally an officer may need to remove an occupant from the vehicle. Officers will not remove occupants as a matter of routine. Requiring subjects to be removed from the vehicle may cause the subject concern and elicit negative attitudes towards law enforcement. Therefore, officers should use sound judgement when ordering a person out of the vehicle. Officers should only remove an occupant from the vehicle when the officer has a reasonable and articulable belief that:

- The subject is armed and/or presents a danger to the officer or another person.
- The officer has probable cause to believe the subject has committed an arrestable offense or pursuant to a warrant.

Officers may also remove an occupant from a vehicle for the following:

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number: 7.12 |
| | Effective Date: 08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date: 08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject: Traffic Stops and Enforcement | |

**7.12.3    REMOVING OCCUPANTS FROM A VEHICLE (CONTINUED)**

- To administer field sobriety tests.
- To conduct a commercial vehicle inspection.
- To conduct a search of the vehicle (refer to SOP 8.24).
- When a potentially dangerous situation exists that endangers the officer or another person.

Officers will only remove the person from the vehicle for the time reasonably needed to mitigate the danger, complete the search, field sobriety testing, or commercial vehicle inspection.

Factors the officer may consider include:

- The subject's physical behavior.
- The officer and subject's physical size and ability.
- The subject's statements.
- Prior knowledge of the subject's history of flight in a vehicle.
- Prior knowledge of the subject's history of assaulting law enforcement officers.
- Probable cause to believe the subject has committed an arrestable offense.
- The presence and number of backup officers on-scene.
- The presence and number of subjects on-scene.

Officers may only conduct a pat down search of a subject based upon a reasonable belief the subject is armed and dangerous, in accordance with SOP 3.6 (Field Contacts/Pat Down Searches) and SOP 8.24 (Warrantless Searches). Officers will not conduct pat down searches as a matter of routine. Merely being nervous, in a high-crime area, or being the subject of an investigative stop are not sufficient factors, by themselves, to remove a person from a vehicle or conduct a pat down search.

Officers should not routinely seat subjects on the ground. Requiring subjects to be seated on the ground may cause the subject concern and elicit negative attitudes towards law enforcement. Therefore, officers should use sound judgement when ordering a person to sit on the ground. Officers should refer to SOP 3.6 (Field Contacts/Pat Down Searches) for the limited circumstances which an officer may require a person to be seated on the ground.

Officers should inform the person they are not under arrest. If circumstances change and the subject does become under arrest, the officer should inform the person they are now under arrest.

**7.12.4    SEARCHES OF STOPPED VEHICLES**

All searches of stopped vehicles, including canine searches, will be conducted pursuant to a search warrant or in accordance with SOP 3.6 (Field Contacts/Pat Down Searches) and SOP 8.24 (Warrantless Searches).

**7.12.5    CITATIONS**

Members authorized to issue citations are responsible for the accountability for electronic or paper citations issued to them. Officers may issue a citation electronically, using the Kentucky Open Portal Solution (KYOPS)

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number: 7.12 |
| | Effective Date: 08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date: 08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject: Traffic Stops and Enforcement | |

### 7.12.5   CITATIONS (CONTINUED)

system, to any motor vehicle operator found to be in violation of any of the offenses listed in KRS chapters 186 and 189. While individual members are responsible for citations issued to him/her, the Kentucky State Police (KSP) has the final authority for accountability for issued and voided eCitations. KRS 431.455 prohibits members from invalidating, or attempting to invalidate, destroying, or attempting to destroy, a uniform citation which has been lawfully issued.

Paper citations, which should only be used if the KYOPS system is down or the officer does not have access to a Mobile Data Terminal (MDT), are issued to officers from their respective division/section/unit. All officers must sign the Citation Accountability Log (LMPD #06-0017) for all paper citations issued to them. Any voided paper citations must be turned in to the division/section/unit and logged on the Voided Citation Log (LMPD #06-0048) (KACP 22.4a). Unused paper citations will be stored in a secure location in each division/section/unit.

Traffic enforcement data is kept by the KSP and retained in the KYOPS system. The KYOPS system allows for daily reporting of crime data and the ability to query all data that is contributed to the repository. The Traffic Unit can retrieve this data at any time, using queries based on location, in order to better utilize resources.

Officers issuing a citation will complete the "Post-Arrest Complaint" narrative of the Kentucky Uniform Citation. The officer will specify the offense(s) being charged and enter a detailed statement of probable cause in the narrative section of the Kentucky Uniform Citation. The statement of probable cause must sufficiently describe the actions of the accused that the officer relied on to meet the elements of the offense(s). Merely re-stating the charges or making a reference to an incident report number is not sufficient for establishing probable cause or meeting the elements of the offense (refer to Kentucky Rules of Criminal Procedure [(RCr) 3.02(2)].

Traffic citations for non-residents of Jefferson County are processed in the same manner as citations for local residents. Pursuant to KRS 189.999, traffic citations issued to juvenile drivers, under the age of 18, are not pre-payable. An officer issuing a citation to a juvenile driver will appropriately mark the "Court" box on the citation and issue a valid court date based on the court assignment calendar and Jefferson County Office of the Circuit Court Clerk (OCCC) guidelines.

When citing a driver for multiple traffic violations, officers will list all applicable charges in the "Charges" section of the traffic citation. Each line in the "Charges" section must be completed before moving to the next citation to list additional violations. Officers are prohibited from writing multiple traffic citations to one (1) operator when all of the charges would appropriately fit on one (1) citation. Any motor vehicle operator receiving citation(s) for multiple violations, either simultaneously or at different times, is required to satisfy the requirements of the citation(s).

Civilian members who have limited authority to issue citations for non-moving violations (e.g. Traffic Control Officers (TCOs), Tow-In Equipment Operators, Storage Equipment Operators) will not issue citations while off-duty or working secondary employment, unless authorized, in writing, by the Chief of Police, or his/her designee.

### 7.12.6   METRO311 COMPLAINTS

Metro311 complaints regarding traffic violations on surface streets are forwarded to the appropriate division/section/unit for assignment, investigation, and handling. An officer assigned a complaint will evaluate

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number: 7.12 |
|---|---|
| | Effective Date: 08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date: 08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject: Traffic Stops and Enforcement | |

### 7.12.6     METRO311 COMPLAINTS (CONTINUED)

the complaint and take appropriate enforcement action. A log will be maintained, indicating the date and time the complaint is received, the officer assigned, and any action taken. Metro311 complaints will be returned by the assigned suspense date with documentation of the action taken. The Traffic Unit handles complaints on the interstate system.

### 7.12.7     RECERTIFICATION BY LICENSING AUTHORITY

If an officer observes an operator who demonstrates physical or mental infirmities that render him/her unsafe to operate a motor vehicle, the officer may request the state to recertify the operator.

To request recertification, the officer will complete a Medical Review Board Affidavit. In the statement section, the officer will list any known, or suspected, medical impairment (e.g. low visual acuity, hearing problems, incoherency, etc.). The officer will also report his/her observations and reasons for the request. If it is the officer's opinion the operator has caused a motor vehicle collision, the officer will attach a photocopy of the collision report to the request form. A copy of this form and its attachments will be retained in the division/section/unit files.

The officer will forward the completed form and its attachments to the appropriate Bureau Commander within his/her chain of command. The commander will forward the information to the Division of Driver Licensing, located in Frankfort, Kentucky. The Division of Driver Licensing will notify the operator of the pending recertification.

### 7.12.8     TRAFFIC COLLISIONS (KACP 23.2)

Officers issuing a citation or making an arrest as a result of a traffic collision will record the assigned incident control number (ICN) on the citation. In the case of injury collisions, the severity of the injuries will be noted in the post arrest complaint section. Information of other persons involved may be listed in the witness section.

Traffic collision data is maintained by Records Management. Electronically-entered traffic collision data will be reviewed and approved by the Data Resolution Unit of Records Management in the KSP Accident Database (refer to SOP 7.2, SOP 7.3, and SOP 7.4). Officers should refer to SOP 7.1 on the requirements for writing these reports.

The Traffic Unit reviews traffic collision data to identify the locations where traffic engineering issues may need to be improved or corrected. The Traffic Unit also reviews traffic collision data and traffic enforcement data to see if increased enforcement results in the reduction of the number of collisions at identified locations.

TRIMARC holds quarterly Freeway Incident Management meetings for District 5 (Jefferson County, Bullitt County, Franklin County, Henry County, Oldham County, Shelby County, and Trimble County) in Kentucky. The Traffic Unit, Louisville Metro Emergency Medical Services (LMEMS), KSP, towing agencies, etc. participate in these meetings to discuss highway closures and traffic-related issues.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   7.12 |
| | Effective Date:  08/09/04<br>Prv. Rev. Date: 08/06/18<br>Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards:<br>KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.9      DRIVING UNDER THE INFLUENCE (DUI)** (KACP 21.1c, 23.1d)

DUI presents a grave danger to public safety. Given this danger, it is the policy of the LMPD that officers arrest operators where probable cause exists that a violation of DUI has occurred. There are certain circumstances where it is not possible to arrest an operator who has violated these statutes (e.g. hospitalization). In these circumstances, blood evidence will be drawn and an officer will request the approval of a commanding officer before a suspect may be cited in lieu of arrest. Under no circumstances may an officer issue a warning to operators who have committed a DUI violation.

When an officer's observations lead him/her to believe an operator may be committing a DUI offense, the officer will conduct standardized field sobriety tests. If conducting the field sobriety tests poses a danger to the safety of the officer or the operator, the officer may elect not to use them and should make note of such reasons in the post arrest complaint. The officer will take appropriate enforcement action based upon the results of the field sobriety tests and his/her observations.

If the officer arrests the operator and has reason to believe alcohol is the primary influencing factor, he/she will transport the subject, as soon as possible, to the Louisville Metro Department of Corrections (LMDC), if medical attention is not required, and present him/her to the Breath Alcohol Technician (BAT). The technician will take custody of the prisoner. He/she is responsible for requesting the individual take a chemical test and offering the individual the chance to contact an attorney. Officers will not be present during the BAT's observation period of the prisoner. The BAT will prompt the officer by reminding him/her the observation period is about to begin. At this time, the officer will exit the room and remain in the sally port until the testing is complete. After the technician completes the testing, he/she will turn the prisoner back over to the officer, along with the results of the test.

If the officer arrests the operator and has reason to believe the primary influencing substance is not alcohol, or the operator's actions are not consistent with his/her physical condition, he/she will transport the suspect, as soon as possible, to the LMDC, if medical attention is not required, and present him/her to a BAT. If the subject's breath alcohol level is below .08, the arresting officer should consider contacting a Drug Recognition Expert (DRE), through MetroSafe, to evaluate the suspect's condition. Officers will obtain approval of a Traffic Unit commanding officer before contacting a DRE. A blood and/or urine sample may be requested by the BAT, the DRE (if present), or the arresting officer, following the evaluation. The operator must consent to any and all blood, breath, and/or urine tests requested by the officer or he/she will be charged with refusal to submit to a chemical test (KRS 189A.105).

In instances where a subject is suspected of operating a vehicle under the influence of alcohol and his/her breath alcohol level is below .05 at the LMDC, it shall be presumed the defendant was not under the influence of alcohol (KRS 189A.010). The officer will notify a commanding officer and determine the appropriateness of continuing with an arrest. If the decision is made to release the operator, an Administrative Incident Report (AIR) will be completed, via the BlueTeam link, located on the LMPD Intranet, pursuant to SOP 3.1.

Only after complying with all tests requested by the officer, may the operator request, at his/her own expense, to have an independent blood test (IBT) conducted by an authorized medical technician (refer to SOP 7.6).

An operator may only be cited and released for a DUI offense when all of the following conditions are met:

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   7.12 |
| | Effective Date:   08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

### 7.12.9    DRIVING UNDER THE INFLUENCE (DUI) (CONTINUED)

- The operator is to be hospitalized. Hospitalization is defined as placing a person in the hospital as a patient for a period of time. Treatment in the emergency room (ER) does not constitute hospitalization.
- The operator is physically injured to such a degree that he/she is no longer a danger to himself/herself or others due to intoxication and cannot voluntarily leave the hospital. If the operator is still physically capable of leaving the hospital, the officer must remain with the operator until he/she is no longer a danger to himself/herself or others due to intoxication, before citing the operator in lieu of arrest.
- Blood evidence has been drawn. This may be done at the request of the officer or for treatment purposes.
- A commanding officer has granted approval for the operator to be cited in lieu of arrest. In these circumstances, the commanding officer will complete an AIR, via the BlueTeam link, located on the LMPD Intranet (refer to SOP 3.1). For the purpose of determining the appropriateness of issuing a citation in lieu of arrest, an acting sergeant is not considered a commanding officer. An acting sergeant may complete the AIR, listing the commanding officer who authorized issuing a citation in lieu of arrest.

### 7.12.10    MOBILE RADAR TRAILERS AND FIXED RADAR SIGNS

The LMPD utilizes mobile radar trailers to promote roadway safety. Some communities have installed fixed radar signs in problem areas. These devices inform drivers of their current speed and alert drivers when their speed exceeds the posted speed limit. The devices are to be used for informational purposes only and should not be used as a measurement of speed when issuing a citation to a violator.

### 7.12.11    HAZARDOUS ROADWAY CONDITIONS

All officers encountering hazardous roadway conditions are responsible for reporting these conditions to the appropriate agency for corrective action. If an officer discovers a visual obstruction (e.g. debris, defects in the roadway, missing or damaged road signs, lighting, traffic control devices, or roadside hazards), the officer will immediately contact MetroSafe, via radio or telephone. The officer will report the nature of the problem and the exact location. MetroSafe will contact the appropriate agency responsible for addressing or correcting the problem. If the roadway hazard presents a potential danger to motorists, the officer should take the necessary action to address the safety of the motorists and expedite the flow of traffic. If the officer is off-duty, then the officer will request assistance from on-duty personnel. The action taken may require the manual direction of traffic, using temporary control devices requested through MetroSafe or physically removing the obstruction or hazard from the roadway.

Citizen complaints or suggestions regarding traffic engineering deficiencies (e.g. signs, potholes, markings, traffic lights, etc.) should be referred to Metro311 at (502) 574-5000 or 311. Metro311 is responsible for notifying the appropriate agency for improvement or correction.

The Traffic Unit and MetroSafe are responsible for reporting traffic engineering deficiencies and traffic enforcement data to the appropriate agency (e.g. Public Works and Assets, Kentucky Transportation Cabinet, etc.) for improvement or correction.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:  7.12 |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.12**      **RADIO PROCEDURES**

Members should notify MetroSafe, via a monitored dispatch channel, as soon as possible, of any traffic stop in accordance with SOP 3.8 (Communications Equipment Usage).

**7.12.13**      **VEHICLE STOP REPORTING FORMS**

Officers will complete a Vehicle Stop Reporting form for every traffic stop, regardless of whether a citation is written or an arrest is made. Officers will complete the form in accordance with SOP 8.8 (Biased Law Enforcement Practices).

**7.12.14**      **SUPERVISORY REVIEW**

Commanding officers will review the paper citations and arrest slips issued by the officers under their direct supervision. The commanding officer will place his/her code number on the upper right hand corner of the citation, indicating he/she has reviewed the citation. The citation review includes, but is not limited to, the following:

- Missing/incomplete personal information of the offender
- The Vehicle Stop Reporting form control number (if applicable)
- The appropriate charges
- The arrest or citation date, time, and location
- The arrest or citation narrative, statement of probable cause, and elements of the crime
- The valid court date, time, and location
- The report number, if the citation or arrest is related to clearing a reported incident
- Language indicating how the defendant posed a risk of danger (if applicable) (refer to SOP 10.1)
- Language describing how the defendant failed to follow the officer's reasonable instructions (if applicable) (refer to SOP 10.1)
- Language indicating why there are reasonable grounds to believe the defendant will not appear in court (if applicable) (refer to SOP 10.1)
- Legible handwriting